Nelson *v.* Goebel.

---

NELSON, Plaintiff in Error, *vs.* GOEBEL, Defendant in Error.

1. A purchaser at a tax sale, under city ordinances, takes no title, unless due notice has been given of the sale, as prescribed in the ordinances.

2. No presumption is made in favor of tax titles under city ordinances. A party relying upon such a title must show a strict compliance with all the

prerequisites. Thus, where the assessor or other city officers are required to return and publish a description of the property, and the name of the owner, and their description is erroneous or incomplete, no title will pass to the purchaser.

### Error to St. Louis Circuit Court.

*Todd & Krum,* for plaintiff in error. 1. Under its charters of 1839 and 1841, the city had power to levy the tax, and to sell for the non-payment of it. 2. All the proceedings were regular, and in substantial conformity with the provisions of the charter and ordinances. It is said that the assessor, in his return, did not mention the *streets* which bounded the property, nor the name of the owner, as he was required to do by section six of the ordinance, approved March 28, 1835. To this it may be answered, that the ordinance is merely directory, and the assessment and return are in *substantial* compliance with it. The object being to have a description of the property, certainty to a common intent is all that was contemplated or is required. By the description given, the property can easily be located. Again, it is said there was no notice by the comptroller of the sale of the forfeited lots, made July 15, 1846. This raises the question what is meant by the words " in manner and form," &c., in the postponing ordinance. Notice having been duly given, and a day fixed for the sale before that ordinance was passed, the day of sale was merely postponed, just as a sheriff would postpone an execution sale. The " *manner and form*" of the sale was by public outcry, &c. It should be borne in mind that the lot was then the *property of the city* by forfeiture, and the reason for notice did not exist.

*F. M. Haight,* for defendant in error. To pass land by a sale for taxes, all the prerequisites must be strictly complied with, and in this case they were not. 1. The assessment does not describe the property, as the ordinance required. No streets are mentioned. 2. The name of the owner is wrongly stated in the assessment. 3. No notice was given of the post-

poned sale, as the ordinance prescribed. 4. By the ordinance, the city could only purchase the property at auction in the absence of other purchasers. It does not appear in this case that there was any necessity for a purchase by the city, nor for what sum she purchased, or that she paid any thing. 5. The defect, however, which must certainly be fatal, is the misdescription of the premises and defectiveness of the deeds.

RYLAND, Judge, delivered the opinion of the court.

This was a suit brought by Nelson to recover a lot of ground in the city of St. Louis. The plaintiff claims title under the city, by virtue of a forfeiture to the city for the non-payment of taxes, and then under a sale by the city to the plaintiff. On the trial below, the court instructed the jury, "that, taking and considering all the evidence in this case as true, still the plaintiff is not entitled to recover, and the jury should find the issue for the defendant." Upon this instruction, the plaintiff submitted to a non-suit, made an unsuccessful motion to set it aside, and afterwards sued out a writ of error, and brings the case to this court.

It becomes necessary, then, for this court to take notice of the plaintiff's title, as made out in the court below. The plaintiff read the ordinance of the city regulating the revenue and taxes of the city, approved March 28, 1835. This ordinance provides for the appointment of an assessor; prescribes his duty; how he shall assess the property; what property shall be assessed; make return of the assessment list, &c. Section 6, c. 1, of this ordinance, is, in part, as follows:

"That the said assessor shall, within forty days after his qualifying as aforesaid, make a return of property, the nature or species whereof is mentioned in this ordinance, describing in his said assessment list, the street or streets on which any real estate by him assessed lies, together with the number of the block, and the number of the house (if any) in said block, and the names of the owners, and also the name or names of the

person or persons owning or possessing any personal property made taxable by this ordinance, together with a description of such property, and the amount at which the same has been assessed."

This ordinance also provides for the appointment of a collector, and prescribes his duties. Section 3 of chap. 2 of this ordinance, is as follows:

"That whenever the taxes aforesaid, or any part thereof, shall be unpaid, and sufficient goods, chattels and effects cannot be found to satisfy the same, the collector shall cause notice to be given to all delinquents or their agents, by handbills, (printed or written,) put up at six of the most public places in the city of St. Louis, containing a list and complete description of all property upon which a tax remains due and unpaid, the name of the person to whom charged, and the amount of the tax, or such part of the same as remains unpaid, and notifying such delinquents that, unless the taxes on said property, together with six per cent. on the same, for the use of the collector, be paid on or before a day therein mentioned, which shall not be less than thirty days from the day of setting up such notices, the property therein mentioned will then be sold, at the court-house door of the county, to satisfy the taxes due thereon, and ten per centum in addition thereto; and for all delinquencies in the payment of taxes on real estate, due by non-residents, the notice aforesaid shall be published in one of the public newspapers printed in the city, for thirty days previous to the day of sale, and the same proceedings shall be had as above provided; and if the taxes on any lot or parcel of ground, with six per cent. aforesaid, be not paid before the day appointed for the sale thereof, the collector shall sell, at public auction, at the time and place in said notice mentioned, so much of each lot or parcel of ground as will be sufficient to pay and satisfy all taxes due and unpaid thereon, with the addition of ten per centum on the same, for the use of the collector; and if any lot or parcel of ground thus taxed and offered for sale, cannot be sold for the amount due thereon, with the

Nelson v. Goebel.

additional per centum, the collector shall bid them off to the city; and where part only of a lot or parcel of ground shall be sold, the same shall adjoin one of the outlines or corners of the lot or parcel of ground thus taxed, so as not to include an improvement, if to be avoided; and a designation of the part so sold shall be made by the collector at the time of the sale; and the said collector shall deliver to the purchaser, (or to the register, if bought for the use of the city,) a certificate of such sale; and from and after the time of such sale, the lots and parcels of ground so sold, shall be assessed, and the taxes paid by the purchaser."

The plaintiff also read an ordinance declaring the per centum to be collected on the tax list of the city of St. Louis for the year 1842, No. 1032, approved July 30, 1842, as follows:

Sec. 1. That there shall be and hereby is levied a tax of one half of one per centum on the amount of the assessment list within the old limits, and a tax of one sixteenth of one per centum on the amount of the assessment list, on all that portion of the city added to the old city limits by act of the legislature, approved February 15, 1841, for the year 1842; and the city collector is hereby authorized and directed to collect of each and every individual assessed in said list, one half of one per-centum, on the amount of property charged to him within the old city limits, and of each and every person assessed in said tax list one-sixteenth of one per centum on the amount of property charged to him within the new addition to the city limits.

The plaintiff then introduced Augustin Kennerly as a witness, who testified, that he was appointed collector of the city of St. Louis by the mayor and board of aldermen in the year 1842, and acted as such collector during that year; that he knew John McCausland in his life time; that he was now deceased; that said McCausland acted as assessor for the city of St. Louis for the year 1842. Witness had seen McCausland write and knows his handwriting. A manuscript book was shown witness, with a front or title page written upon it, as follows:

Nelson *v.* Goebel.

## *Proclamation.*

*To all whom it may concern:*

Be it known, that the assessment list of the city for the year 1842, has been completed, returned and approved. Now, therefore, by virtue of authority in me vested, I do hereby require the honorable, the board of aldermen, to convene at their usual place of meeting, on Thursday, the 14th day of July next, at 10 o'clock, A. M., then and there to hear and decide upon such appeals from said assessment as may be made.

And I do hereby give notice to all persons, who may think themselves aggrieved by said assessment, of the meeting of the board of aldermen, as a court of appeals, to which they may make appeals from the assessment. Given under my hand, &c., June 27th, 1842. By the mayor. J. A. Wherry, Register. (L. S.) GEORGE MAGUIRE.

Witness stated that "this book, so far as it purports to be a list and assessment of real and personal property subject to taxation in the city of St. Louis for the year 1842, is in the handwriting of the said McCausland; the book is the original assessment or tax book, made by said McCausland, for the year 1842. On one of the pages of said book appears the following:

*A List of Property, real and personal, subject to taxation for the city of St. Louis, for the year 1842, within the New Limits of the city of St. Louis, and without the Old.*

| G.<br>First Ward. | Block. | Street. | Front. | Depth. | Description of Real Estate. | Value of Lot. | Value of improvements. | Total Value. | Aggregate of assessed value. | Tax. | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gerit Goeble, | 3 | | 400 | 162 | Payne's southern addit'n, being bl'k 3. | $2000 | $500 | $2500 | | $1 94 | Sold. |

Witness says the page and entries here shown to him are in the handwriting of said McCausland, excepting the word,

" sold," on the right hand margin, which word was written under the direction of witness, while acting as collector of said city. On one of the pages of said book and after the entries last above mentioned, appears, in the handwriting of said McCausland, and signed by him, the following : .

State of Missouri, ⎱ ss.
City of St. Louis, ⎰

I make the foregoing return to the chairman of the committee of ways and means of the board of aldermen of the city of St. Louis, containing a list of all the property subject to taxation, within the limits of the city aforesaid, for the year eighteen hundred and forty-two, (1842,) commencing with the name of Anderson & Thompson and ending with the name of Samuel White, for persons and property within the limits of said city, as fixed by charter, approved February 8, 1839, and commencing with the name of Edwin Adriance, and ending with the name of William Wood, for persons and property without the city limits, as fixed by charter, approved February 8, 1839, and within the territory brought within the city limits by charter, approved February 15, 1841. ˆ

JOHN McCAUSLAND, City Assessor.

And upon the following page appears the following, with the common seal of the city of St. Louis impressed thereon :

State of Missouri, ⎱
City of St. Louis. ⎰

I, Adam L. Mills, president of the board of aldermen of the city of St. Louis aforesaid, do hereby certify the foregoing to be the tax list of the said city for the current year, 1842, the aggregrate of which amounts to the sum of $47,760 66. *In witness whereof*, &c.   August 1, 1842.

Witness stated also that, some time in the month of August, of the year 1842, as collector of the city of St. Louis for that year, he received this same book from the corporation of St. Louis, for the purpose of collecting the taxes assessed upon the property therein assessed and described. Witness had deputy collectors, and said McCausland acted that year as a

deputy collector under witness. A printed paper, purporting to be a copy of the *Daily Missouri Republican*, being shown witness, he says that said paper, under the caption of " *City Tax List for* 1842," contains a true list and description of the property and notice published by him in the said newspaper, in the city of St. Louis, on the 23d day of November, 1842, which notice and list (omitting what does not relate to the lot in question) is as follows :

### City Tax List for 1842.

Notice is hereby given to residents of the city, as well as non-residents, owning real estate within the city of St. Louis, that by virtue of authority in me vested by an ordinance of the city of St. Louis, entitled " An ordinance regulating the revenue and taxes," approved March 28, 1835, I will, on Friday, the 23d day of December, 1842, sell, at public auction, at the court-house door, between the hours of ten o'clock, A. M., and four o'clock, P. M., of said day, for ready money, the following described real estate, or so much thereof as will be sufficient to pay the taxes thereon, annual and special, due the city of St. Louis for the year eighteen hundred and forty-two, (1842,) together with the costs and ten per cent. on said taxes, unless the said tax and costs, with six per cent. thereon, shall have been previously paid.

| Names. | Bl'k. | Street. | Feet Front. | Feet Deep. | Boundaries. | Am't. |
|--------|-------|---------|-------------|------------|-------------|-------|
| Girt Gobal, | 3 | | 400 | 162 | Payne's southern addition, being block 3. | $1 94 |

AUG. KENNERLY, City Collector.

St. Louis, November 23, 1842.

Witness stated that said notice and list was by him, in printed handbills, posted at six or more of the most public places in the city of St. Louis, at least thirty days before the 23d day of December, 1842. Witness further stated that, after the said

tax book or collection list came into his hands, he gave notice thereof in the *Missouri Republican*, a public newspaper, printed in the city of St. Louis, which notice was published in said paper in the manner and for the length of time required by the said ordinance, approved March 28, 1835, and also that he gave notice to delinquent tax payers, by handbills, as aforesaid, in the manner, and at the time provided, and as required by said last mentioned ordinance ; that it was his practice to give as long notice as possible. Witness further stated that, at the public sale mentioned in the said newspaper and handbills, printed and posted as aforesaid, the lot or parcel of land sued for in this action, was sold by him on the 23d day of December, 1842, at public auction, at the court-house, in the city of St. Louis, to the said city, for the sum or amount of the taxes assessed against said lot and the costs, amounting, in the aggregate, to the sum of $——, the said city being the highest and last bidder at said sale for the said lot.

The plaintiff then produced Robt. Simpson as a witness, who testified that he acted as comptroller for the city of St. Louis, during the year 1842, and from that time continuously to the spring of the year 1847, and that he knew John McCausland in his life time ; that the book shown to witness (the same one spoken of by Augustin Kennerly) is the original assessment list or tax book for the year 1842, and the same list returned to the city council in 1842, by the assessor of that year, John McCausland. The said assessment list or tax book, that is, the pages of said book referred to by Mr. Kennerly, are in the handwriting of said McCausland. This same book was also placed in the hands of the collector, Aug. Kennerly, for the year 1842, and was by him returned to the city corporation. As comptroller of the city of St. Louis, witness, in the year 1846, was required, by the ordinances of the city, to advertise and sell all the lots and real estate which the city had purchased for taxes, and which had become forfeited to the city. A newspaper, purporting to be the " *Daily Missouri Republican*," a public newspaper, printed in the city of St. Louis,

being produced, witness says that said paper contains a true copy of the notice and descriptive list of lands, which he, the witness, caused to be published in the said *Daily Missouri Republican;* also in the *Daily Missouri Reporter*, and also in the *Daily New Era*—three public newspapers, printed and published at that time in the city of St. Louis—which notice and list witness caused to be published in each of said papers, as required by ordinance, at least once a week for six weeks prior to the first Monday in March, in the year 1846—the first publication of which notice and list, in the said papers, as aforesaid, was on the 21st day of January, 1846, and was continued once each week for six weeks. Witness also put up or posted, in fifty or more of the most public places within the city of St. Louis, the same notice and list which was published in each of the said newspapers, as above stated. The notice and list published and posted, as above stated, is as follows, (omitting all of the descriptive list of real estate, excepting the lot in question :)

### *Notice.*

The undersigned gives notice, that the real estate described below has been forfeited to the city of St. Louis, and a deed executed for the same ; but, by ordinance, the said real estate may be redeemed at any time before the first Monday of March, 1846, by paying the original tax and costs, with interest at the rate of ten per cent. per annum. All the real estate herein below described and not redeemed before the first Monday of March next, will be sold, and deeds executed for the same. Of the time and place of sale, due notice will be given.

R. SIMPSON, Comptroller.

January 21st, 1846.

Nelson *v.* Goebel.

*Abstract of Lots sold 23d December, 1842, to satisfy the City Taxes for the year 1842, by Augustin Kennerly, Collector.*

| To whom assessed. | No. Bl'k | St. or Ave. | Feet Front. | Feet Deep. | For what year. | Boundaries and Description. | Am't of Tax and Costs. |
|---|---|---|---|---|---|---|---|
| Girt Gubal, (Payne's Ad.) | 3 | | 400 | 162 | 1842 | Payne's Addition to St. Louis, being Lot No. 3. | $2 31 |

Which notice and list witness says he published and posted, in every particular, at the time, in the manner, and for the length of time provided and required by the ordinances of the city in force at the time. A manuscript book being shown to witness, purporting to be a register of tax sales, witness says he knows the book, and the same is an abstract of sales made of real estate for taxes due the city of St. Louis. In the said book or "*Register of Tax Sales*," appears the following:

## Register of Tax Sales.

*Abstract of Sales of Real Estate for Taxes due thereon for the year 1842, by A. Kennerly, City Collector, at the Court House door, in the city of St. Louis, at public outcry, on the 23d of December, 1842.*

| Names of Owners. | Block. | Street or Avenue. | Ft. Front. | Ft. Deep. | Boundaries and description of property sold. | Amount. | Name of Purchaser. | No. of Certificate. | Sold to Thomas Nelson, July, 1846. |
|---|---|---|---|---|---|---|---|---|---|
| Girt Gabal, | 3 | | 400 | 162 | Payne's Addition to St. Louis, being Block No. 3. | $2 31 | The city of St. Louis. | 210 | |

Witness states also, that the said sale, mentioned in the said notice published and posted by him, as above stated, did not take place at the time therein specified, because the same was postponed by an ordinance of the city council to the second Monday, the 15th day of July, 1846, on which last mentioned day, at the court-house, in the city of St. Louis, the lot in

question was sold at public auction or outcry, by witness, then acting as comptroller of said city, to the plaintiff in this case, for the sum of $4 60, the said plaintiff being the highest and last bidder for said lot. Witness does not know the location of the lot in question; does not know where Payne's addition is; believes there are two "Payne's additions" to St. Louis, one in the north part and the other in the south part of the city of St. Louis. Plaintiff then read in evidence ordinance No. 1505, which is as follows :

*An ordinance providing for the disposal of Real Estate heretofore sold to the city of St. Louis, for taxes due said city.*

*Be it ordained by the City Council of the city of St. Louis:*

Sec. 1. That it shall be duty of the city register to make out a complete descriptive list of all real estate sold to the city for taxes, the time for redemption of which shall have expired, and to cause the same to be published monthly in three newspapers published in the city, until the first Monday in January, 1846, giving notice at the same time, that said real estate may be redeemed at any time prior to the first Monday in January, 1846, by paying to the city treasurer the amount of such tax and cost of sale and advertising, together with interest from the time said tax was due and payable, at the rate of ten per centum per annum.

Sec. 2. That all real estate purchased by the city prior to the first Monday of January, 1844, for city taxes, and which has not been redeemed, or which shall not be redeemed prior to the first Monday of January, 1846, is hereby declared forfeited to the city of St. Louis.

Sec. 3. That, on the presentation to the register of the evidence of the payment of taxes, costs, advertising and interest, as provided by the first section of this ordinance, he shall issue a certificate of redemption and enter upon his registry, as redeemed, the property so redeemed. The party

receiving said certificate, to pay to the register a fee of fifty cents therefor.

Sec. 4. It shall be the duty of the register, immediately after the first Monday of January, 1846, to make and deliver to the comptroller a descriptive list of all real estate sold to the city for taxes, and which shall have become forfeited to the city by reason of the non-redemption of the same, which list shall contain the name of the persons (if known) to whom the property was assessed, the date of sale, by whom sold, and the nature of the tax, whether general or special; and the comptroller shall, under the advice of the city counsellor, execute a deed, or deeds, to the city of St. Louis, for all real estate declared forfeited, and included in said list, and deliver said deed or deeds, properly acknowledged, to the register, who shall cause the same to be recorded in the office of the recorder, for the county of St. Louis.

Sec. 5. On the receipt of the list to be furnished by the register, as required in the next preceding section, it shall be the duty of the comptroller to cause the same to be published in three newspapers of the city, once a week for six weeks, and also cause copies to be posted in fifty of the most public places within the city of St. Louis, which said advertisement shall be accompanied by a notice that the property in said list described may be redeemed, at any time prior to the first Monday of March, 1846, in the manner prescribed in the first section of this ordinance, by paying to the treasurer the amount of tax, cost and advertising, together with interest from the time said tax was due and payable, at the rate of ten cent. per annum.

Sec. 6. So much of the real estate forfeited and deeded to the city, and not redeemed, as provided for in the next preceding section, shall be sold by the comptroller at public outcry, at the eastern front of the court-house, in the city of St. Louis, within twenty days after the said first Monday of March, 1846, notice being given of the time and place of such sale, in three of the city papers, as may be necessary to satisfy all taxes due, with the interest and cost thereon.

Sec. 7. The purchasers of real estate, sold as aforesaid, shall be entitled to a deed or deeds, to be executed by the comptroller, conveying all the right, title, interest and estate which the city acquired by the non-payment of the taxes and consequent forfeiture of said real estate, without warranty; but said conveyance shall not exempt the property so conveyed from any lien for taxes which may have accrued subsequent to the first Monday of January, 1844; and for each deed, so made, the comptroller shall be entitled to a fee of one dollar and fifty cents, to be paid by the purchaser.

8. The comptroller shall, after deducting a commission of one per centum on the amount of money realized from the sale, as provided for in the next preceding section, pay over the proceeds of said sale to the treasurer, to be placed to the credit of city revenue, and report to the city council the proceedings had under this ordinance.

Sec. 9. This ordinance shall take effect and be in force from its passage.

Approved, July 10th, 1845.

Plaintiff then read ordinance No. 1621, which is as follows:

*An ordinance supplementary to an ordinance for the disposal of real estate, heretofore sold to the city for taxes due said city, approved July 10th, 1845.*

*Be it ordained by the City Council of the city of St. Louis:*

Sec. 1. That the sale of the real estate forfeited to the city, and directed to be sold within twenty days after the first Monday of March, 1846, be and the same is hereby directed to be postponed until after the first Monday of July, 1846. The comptroller shall, within twenty days after the first Monday of July, 1846, proceed to sell the said real estate remaining unredeemed, in the manner and form as prescribed in the ordinance to which this is a supplement.

Sec. 2. Any or all of the real estate forfeited to the city, may be redeemed, at any time prior to the first Monday of

Nelson *v.* Goebel.

July, 1846, in the manner prescribed in the first section of the ordinance to which this is a supplement.

Sec. 3. All the real estate forfeited to the city for the non-payment of special taxes for grading and macadamizing streets, when the parties taxed would have been entitled to a refunding certificate, may be redeemed at any time before the first Monday of July, 1846, by paying to the treasurer the costs of sale and advertising, with ten per cent. interest on the costs, and in such cases, no refunding certificate shall issue.

Sec. 4. This ordinance shall take effect from its passage.

Approved, March 10th, 1846.

The plaintiff then introduced Charles G. Ramsay as a witness, who testified that he is the publisher and proprietor of the *St. Louis New Era*, a public daily newspaper, printed in the city of St. Louis, and that he published said paper prior to and during the year 1846. Witness says, the notice and list of property shown to him, and which is the same spoken of by Robert Simpson, late comptroller of the city, was published in the said *St. Louis New Era*, once a week for six weeks prior to the first Monday of March, 1846, the first publication of which notice and list was made on the 21st day of January, 1846. Witness says he has made diligent search, but is not able to find a copy of the said notice and list, and does not remember that he kept a copy. Witness says that said notice and list was published, as aforesaid, in said paper, in the form of a *supplement*, which is the reason, as witness supposes, why he did not keep a copy. The supplement to the *New Era*, spoken of by witness, was not printed at the *New Era* office, but it was printed, by his arrangement, at the *Republican* office, and copies of the supplement were distributed with the *New Era* to its subscribers, just the same as it would have been, if it had been printed in the *New Era* office. Witness does not remember that he ever read the said notice and list, nor does he know that it was ever read in the *New Era* office ; he does not know that the name of the defendant was in said supplement, nor does he know that the lot in controversy was

mentioned in it; but, from his best recollection of the purport and appearance of the notice and list, published by him in supplement form, as aforesaid, it was the same as the notice and list published in the *Republican.* Witness does not remember to have compared them, nor can he now state that their contents were the same.

Henry C. Lynch, a witness for the plaintiff, stated, that he " knows the lot or tract of land sued for in this case; it is situated in *Payne's south Addition* to St. Louis, and is lot or block No. 3, as designated on the plat of the said addition. The lot in question is bounded west by Russell street, south by Geyer avenue, north by Soulard's line, and east by a lot of Greene Erskine. Witness has known the lot since 1838 or 1839; the defendant has been in possession since some time prior to the year 1842; he was in possession of the lot during all that year and has continued in possession ever since, and was in possession of this lot at the time this suit was instituted; the lot in question is within the inclosure of the defendant, which includes what is called " Flora Garden ;" this lot is in the west end of that inclosure. Witness assessed the ground, as assessor for the city of St. Louis, in the year 1845, and thinks the value of the lot in question is about $3 or $4 per month—say $48 a year."

On cross examination, witness stated that the lot in question was south of Mill Creek, some three quarters of a mile. Geyer avenue is open. Soulard's Addition, immediately north of Flora Garden, has not been improved. Goebel lived at what is called " Flora Garden," in the year 1842. Witness knows nothing about what property the defendant had in 1842; knows he had a green house, some shrubbery, &c., but their value he knows nothing of. On re-examination by plaintiff, witness stated that he knew nothing of defendant's personal property in 1842; the first knowledge witness acquired of defendant's personal property was in 1845, when he acted as assessor. The land west of Russell street, witness understood, was claimed by Mr. Russell, in 1842—was then, and ever since

has been enclosed. The lot of Erskine, on the east of the lot in controversy, witness thinks, was improved also in 1842.

The plaintiff then produced a deed, proved its execution, and read it to the jury, as follows :

" This deed, made and entered into this 14th day of January, 1846, by and between Robert Simpson, comptroller of the city of St. Louis, party of the first part, and the city of St. Louis, party of the second part, witnesseth : Whereas, the city council of the city of St. Louis, on the 10th day of July, 1845, passed an ordinance providing for the disposal of real estate heretofore sold to the city of St. Louis for taxes due said city, a copy of which ordinance is hereto subjoined and made a part of this deed ; by the fourth section of which, it was made the duty of the register, immediately after the first Monday of January, 1846, to make and deliver to the comptroller a descriptive list of all real estate sold to the city for taxes, and which shall have become forfeited to the city by reason of the non-redemption of the same, which list shall contain the names of the persons (if known) to whom the property was assessed, the date of the sale, by whom sold, and the nature of the tax, whether general or special, and the duty of the comptroller to execute a deed or deeds to the city of St. Louis, for all the real estate declared forfeited and included in said list ; and, whereas, the said register has, in obedience to said ordinance, certified and delivered to the said party of the first part, the subjoined list of all real estate sold to said city for taxes, and which has become forfeited to the city, by reason of the non-redemption of the same, which list is made part of this deed : Now, therefore, in consideration of the premises, and under the authority in me vested by said ordinance, I, Robert Simpson, comptroller of said city of St. Louis, party of the first part, do hereby grant, sell, and convey to said city of St. Louis, all and singular the real estate in said list described and set forth : To have and to hold the same, with the rights, immunities and privileges and appurtenances thereunto belong-

Nelson *v.* Goebel.

ing, unto the said city of St. Louis and its assigns forever. In witness whereof, &c.

ROBERT SIMPSON, Comptroller.   (Seal.)

*Descriptive List of Real Estate sold to the city of St. Louis, for Taxes due said city, and forfeited by reason of the non-redemption of the said Real Estate.*

| Page 8<br><br>G. | *Abstract of Lots sold on the 23d day of December, 1842, by Augustin Kennerly, City Collector, for the City Taxes due thereon, and bought by the city of St. Louis.* | | | | | |
|---|---|---|---|---|---|---|
| Names. | Block. | Street. | Front. | Depth. | Description of Property. | Tax. |
| Girt Geobal,<br>(Payne's Ad.) | 3 | | 400 | 162 | Payne's Addition to St. Louis, being Lot No. 3. | $2 31 |

Plaintiff then read in evidence a duly certified plan of Payne's southern Addition to St. Louis, showing it to be bounded east by the Carondelet road, west by Principal avenue, north by the northern line of the Cambas tract, and south by Geyer avenue.

Plaintiff also produced, and proved the execution of a deed, which was read in evidence, as follows :

" Whereas, certain real estate situated in the city of St. Louis, by reason of the non-payment of taxes due to the said city, were, by ordinance, approved July 10, 1845, declared forfeited to said city, and a deed therefor executed to said city, and recorded in the office of the recorder of deeds for the county of St. Louis ; and, whereas, all of the real estate not redeemed before the first Monday of March, 1846, was, by said ordinance, and ordinances subsequently enacted, directed to be sold by the comptroller, at public outcry, at the court house door in the city of St. Louis ; and, whereas, I, the comptroller of said city, in compliance with said ordinances, after due notice thereof, did, on the fifteenth day of July, in the year

eighteen hundred and forty-six, expose for sale, at the court-house door in the city of St. Louis, a certain lot of ground, forfeited and deeded to the city of St. Louis, as aforesaid, to-wit: lot No. 3, Payne's Addition to said city, containing four hundred feet in front, and one hundred and sixty-two feet in depth, bounded north by ————, east by ————, south by ————, and west by Girt Gaval, and, at said sale, Thomas S. Nelson, being the highest and best bidder, the said lot was struck off to him, the said Thomas S. Nelson, for the price and sum of four dollars and sixty cents, which sum was paid to the comptroller of said city, the receipt whereof, I, the said comptroller, hereby acknowledge : Now, therefore I, Robert Simpson, comptroller of said city, for and in considera-tion of the sum of four dollars and sixty-three cents, paid as aforesaid, do hereby grant, bargain, sell and convey unto the said Thomas S. Nelson, and to his heirs and assigns forever, all the right, title, claim and interest of the city of St. Louis, in and to the above described lot of ground ; provided, how-ever, that the said lot of ground is not exempt from any lien of taxes to the city of St. Louis, which may or shall accrue subsequently to the first Monday of January, 1844.    Given under my hand, &c., this 27th July, 1846.

"R. SIMPSON, Comptroller."

Here the plaintiff closed his case.    The defendant then in-troduced Louis Dubreuil, who testified as follows : "That previous to and during the year 1842, he acted as constable for the city of St. Louis, and as such collected two or three small executions against the defendant, Goebel, about that time ; he had no difficulty in getting the money to satisfy the executions ; thinks he had more than sufficient personal property, at that time, to satisfy a debt of four dollars and sixty cents.    On cross-examination, witness stated that he could not now remem-ber or state what property Goebel had, at the time referred to ; he had a green house, shrubbery, &c., at his place called "Flora Garden," but witness does not remember, particularly, about them.    Witness was not particular to have noticed Goebel's

property.  His garden and green house were the finest about the city; he was in the habit of selling plants and flowers, and some of the plants and flowers and shrubs were grown in boxes and pots."

The plaintiff, in rebuttal, then read in evidence an execution against the defendant, dated March 6, 1843, with a return of " no goods or chattels" upon it.

This was all the evidence produced on the trial below.

1. The question now occurs, was the court below right in giving the instruction to the jury ?  Let us look carefully at the evidence offered by the plaintiff before we answer this question.   The ordinance of the city, first produced and read, must have an important bearing on this question.   In that ordinance, the foundation of the plaintiff's title is laid.   We pass by the question, as to the power of the city to sell real estate for taxes ; this is no longer a debatable question.   This ordinance requires the assessor to make return of his assessment list, describing therein " the street or streets on which any real estate by him assessed lies, together with the number of the block, and the number of the house (if any) in said block, and the names of the owners, and also the name or names of the person or persons owning or possessing any personal property," &c.   This must be done by the assessor.   This ordinance also requires the collector " to cause notice to be given to all delinquents or their agents, by handbills (printed or written) put up at six of the most public places in the city of St. Louis, containing a list and complete description of all property upon which a tax remains due and unpaid," &c.  The assessor must lay the foundation for this " list and complete description."   He must describe the property by streets, block and number of the house, (if any) and name of the owner, &c.

Now let us look at the description given here : First Ward ; Gerit Goeble ; block 3 ; front, 400 feet ; depth, 162 feet ; description of real estate, Payne's southern Addition, being block 3 ; value of lot, $2,000 ; value of improvements, $500 ;

total value, $2,500 ; aggregate of assessed value, ——— ; tax, $1 94. This was the assessor's return in 1842. This was the description. Here we see, he omits to mention any street, any avenue. He says a block No. 3, in Payne's southern Addition. We find that the collector advertises to sell, on Friday, December 23, 1842 ; in this notice, his description is as follows : Names, Girt Gobal ; block 3 ; street——— ; feet front, 400 ; feet deep, 162 ; boundaries, Payne's southern Addition ; block 3 ; amount, $1 94 ; Augustin Kennerly, city collector ; St. Louis, November 23, 1842. Under this notice, the lot of land sued for in this action was sold by the collector to the city of St. Louis for the amount of the taxes due thereon. Here, then, we see how the city first got title.

Robert Simpson, as the city comptroller, afterwards gives notice of the real estate which had been forfeited for taxes, and for which a deed had been executed to the city, stating that the same may be redeemed by paying the original tax and costs, with interest at ten per centum, &c., any time before the first Monday in March, 1846 ; if not, all the real estate herein below described will be sold and deeds executed for the same. Here he describes the lot in controversy as follows : To whom assessed ; Girt Gabal ; Payne's Addition ; No. block 3 ; street or avenue ——— ; feet front, 400 ; feet deep, 162 ; for what year, 1842 ; boundaries and description, Payne's Addition to St. Louis, being lot No. 3 ; amount of tax and costs, $2 31. Simpson says he gave notice of this sale, published as required by the ordinance. He also proved the register's book and abstract of sales of real estate for taxes due the city, from which book the following was taken :

## Register of Tax Sales.

*Abstract of Sales of Real Estate for Taxes due thereon for the year 1842, by A. Kennerly, City Collector, at the Court House door, in the city of St. Louis, at public outcry, on the 23d of December, 1842.*

| Names of Owners. | Block. | Street or Avenue. | Ft. Front. | Ft. Deep. | Boundaries and description of property sold. | Amount. | Name of Purchaser. | No. of Certificate. | Sold to Thomas Nelson, July, 1846. |
|---|---|---|---|---|---|---|---|---|---|
| Girt Gabal, | 3 | | 400 | 162 | Payne's Addition to St. Louis, being Block No. 3. | $2 31 | The city of St. Louis. | 210 | |

Mr. Simpson stated, that the sale which he advertised on the first Monday in March, 1846, did not take place. The sale was postponed by an ordinance of the city council until July, 1846. This ordinance required the comptroller, within twenty days after the first Monday in July, 1846, to proceed to sell the said real estate, remaining unredeemed, in the manner and form as prescribed in the, ordinance approved July 10, 1845. At this sale, Simpson sold the lot in controversy to Thomas Nelson, the plaintiff, on 15th July, 1846. The ordinance of July 10, 1845, providing for the sale of the lands forfeited to the city, and which remained unredeemed, required the city register to make out a complete descriptive list of all real estate sold to the city for taxes, &c., and to cause the same to be published monthly, &c. This ordinance also required the comptroller, on the receipt of the list furnished him by the register, to cause the same to be published in three newspapers of the city, once a week for six weeks, and also cause copies to be put up in fifty of the most public places within the city, &c.

There was no notice of the sale in July, 1846. After the sale which had been advertised to take place on the first Monday in March, 1846, had been postponed to take place within twenty days after the first Monday in July, 1846, no notice was given when this postponed sale should commence. It

must commence within twenty days after the first Monday in July, as the ordinance declared, and it was to proceed in the manner and form as prescribed by ordinance of July 10, 1845. There can be no doubt that the sale in July was required to be published, and notice required to be given of its time of commencement in the manner and form as was originally required by the ordinance of July 10, 1845. There being, therefore, no notice of the time at which the sale after first Monday in July, 1846, was to begin, the sale of the lot in question was not made in pursuance of the ordinance or laws of the city; and consequently did not divest the title of the defendant, nor give any title to the plaintiff in this suit. On this main ground, therefore, the court committed no error in giving the instruction.

2. There are other points which might as well be noticed. The assessor did not give the proper description of the lot in question on the list returned by him; nor did the register have the proper description of the lot; nor did the comptroller give the proper description of it, as required by the ordinances. There was no street, no avenue, named or mentioned. Mr. Lynch points the locality by streets and avenues. He says the lot was bounded on the west by Russell street, on the south by Geyer avenue, on the north by Soulard's line, and east by Greene Erskine. No complete description of this lot appears anywhere in the proceedings of the register, assessor, collector or comptroller. There were two additions to St. Louis made by Payne. One called Payne's southern Addition. Now the property is described, sometimes in Payne's southern Addition, and afterwards in Payne's Addition. Sometimes as assessed in one name, then in another. However, I suppose any three Americans, writing the German's name according to the sound, would make as great a difference as there appears in this man's name on this record.

There appears no where a proper description given of this lot, as required by ordinance, and therefore, in the first place,

the city did not legally acquire any title to it, nor did the plaintiff ever obtain from the city a legal title.

There is no presumption to be made in favor of tax titles, under the city ordinances. The party relying on his tax title must, to succeed, show the proper compliance with all the necessary prerequisites. Therefore, upon the whole of the evidence in this case, it is the opinion of this court, concurred in by all the Judges, that the court below committed no error in giving the instruction which denied the right of the plaintiff below to recover. The judgment below is, therefore, affirmed.