NATHANIEL EDINGTON v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

#### Division Two, May 14, 1907.

1. **CONTRIBUTORY NEGLIGENCE.** Contributory negligence is an affirmative defense, and, as is true of any other defense of an affirmative character, the burden is on the defendant to establish it to the reasonable satisfaction of the jury.

2. ————: **Choosing Dangerous Way: Question for Jury.** Where a switchman knowingly selects a dangerous way for coupling cars when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence. But whether or not he knowingly selected a dangerous way when a safer one was apparent to him is for the determination of the jury; and the effect of a verdict for plaintiff is that he did not knowingly select a dangerous way (to open the knuckle of the coupling) when he knew there was a safer one.

3. ————: ————: **Unusual Work: Coupling Cars to Live Train: No Notice.** It was not usual for an engine to work at each end of the train, and plaintiff, a switchman, had no notice that a road engine was at work at the other end when the switching crew, at work making up the train, was ordered by the yardmaster to couple the engine and caboose on to its back end, nor did he know that the yardmaster had ordered those

at work at the other end to back it on to another track; and when the caboose reached the back end of the train and the drawheads were about eighteen inches apart, he stepped up to open the knuckle of the automatic coupling, and inserted his arm in the narrow space between the drawheads for that purpose, and just then the train to which the caboose was to be attached, without any notice to him, backed up and caught his hand. *Held,* that the yardmaster was clearly guilty of negligence in failing to notify the switch crew that there would be a movement of the train while the coupling was being done, and that it could not be said, as a matter of law, that the switchman knowingly used a dangerous way of making the coupling when a safer one was apparent.

Appeal from Jefferson Circuit Court.—*Hon. Frank R. Dearing,* Judge.

AFFIRMED.

*L. F. Parker* and *John W. Booth* for appellant.

(1) Respondent was injured by his own negligence in putting his arm in peril when his duty and the exigency of the situation did not imperatively demand it. An employee has no right, moral or legal, to put his life or limb in peril unless his duty and the exigency of the situation concur in requiring him to do so. Doerr v. Brewing Co., 176 Mo. 556; Smith v. Box Co., 193 Mo. 732. (2) Respondent at the time was acting on his own initiative as to the details of opening the knuckle; and it was his duty to do it carefully with reference to his own safety; and at the time he was an experienced switchman. This duty, in such a matter of detail, is properly delegated to an experienced employee. Knorpp v. Wagner, 93 S. W. 967. "It is a familiar principle, which common sense as well as the rules of law ought to teach any one, that where an employee of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence.' 1 Bailey on Personal Injuries, Relating to Master and

Servant, sec. 1121, quoted with approval in: Moore v. Railroad, 146 Mo. 582; Hurst v. Railroad, 163 Mo. 322; Smith v. Box Co., 193 Mo. 737.

*A. R. Taylor* for respondent.

The evidence clearly tended to show that respondent in the act in which he was injured was exercising ordinary care; that he was executing his duty in the usual way for said work. This was affirmatively shown by the witnesses who testified. The law in his favor so presumes he was in the exercise of ordinary care. Buesching v. Gas Co., 73 Mo. 233; Weller v. Railroad, 164 Mo. 199; Riska v. Railroad, 180 Mo. 188; Eckhard v. Railroad, 190 Mo. 613. And the court is asked in the face of the evidence and the verdict of the jury, to hold that he was guilty of contributory negligence as a matter of law. The court should not do so. Here is a complicated condition of work. The court can not know as well as switchmen how a coupling on a dark night, under a hurry order, should be made. The court would not undertake to prescribe a definite rule of conduct as to the manner in which a coupler should be opened and the coupling made, and yet the chief contention for a reversal of this case would require the court to do this exact thing, to-wit, disregard the rule of evidence as old as man's history, that he will not expose himself to peril of life and limb. The court accords this to him. And when this presumption is re-enforced by the positive evidence of competent witnesses that the action of the respondent was free from blame, we respectfully submit that controversy on this question ought to end, and does end, with the finding of the verdict.

BURGESS, J.—This is an action for damages for personal injuries sustained by plaintiff on the 6th day of February, 1902, while in the service of defendant as

a switchman in the yards of defendant in the city of
St. Louis. The trial resulted in a verdict and judg-
ment for eight thousand dollars in favor of plaintiff.
After unsuccessful motions for a new trial and in ar-
rest of judgment, defendant appealed.

The petition, in substance, stated:

That the defendant at the time alleged was a cor-
poration by virtue of law, and used and operated the
railway and engines and cars mentioned in the petition,
as a steam railroad, in the city of St. Louis. That on
the 6th day of February, 1902, at the yards of defend-
ant on Chouteau avenue, east of Tower Grove avenue,
in said city, plaintiff was in the service of defendant
as a switchman, and a part of his duties as such was to
couple and uncouple engines and cars. That on said
day, about 9:45 p. m., the defendant's agent and yard-
master ordered and commanded the plaintiff to couple
the engine and caboose with which he was working to
a caboose car attached to another train and detach it
therefrom and remove it from the track on which it was.
That in obedience to such order and command, the
plaintiff and his fellow-employees, with said engine,
was proceeding to so couple said engine and caboose to
said caboose car, and whilst the plaintiff was in the
work of making said coupling defendant's servants in
charge of the train to which said caboose car was so
attached, negligently caused said train to be backed
without any notice to plaintiff thereof, causing the
plaintiff's right arm to be caught between the coupling
apparatus of said caboose cars and to be so crushed as
to necessitate its amputation, requiring two amputa-
tions of said arm. That the defendant's said agent
and yardmaster was negligent in ordering said train
to be backed whilst the plaintiff was engaged in making
said coupling, without any notice to plaintiff, which
said negligence directly contributed to cause the plain-
tiff's said injuries. That by his injuries so sustained

the plaintiff has suffered and will suffer great pain of body and mind; has been permanently crippled and disabled, and has lost and will lose the earnings of his labor and avocation as a switchman; has incurred and will incur large expenses for medicines, medical and surgical attention, to his damage in the sum of twenty-five thousand dollars, for which sum he prays judgment.

Defendant's answer consisted of a general denial, a general plea of contributory negligence, and a general plea of assumption of risk.

It appears from the evidence that plaintiff was an experienced switchman, and as such was employed by the defendant in its Chouteau avenue yards in the city of St. Louis. Said yards were switchyards used for making up trains to go out on the main line. Besides the main track there were five other tracks called switch tracks, branching off from the main track at various intervals, and used for making up trains. One of these tracks led to the scales for weighing cars and was called the scale track; the others were known as tracks Nos. 1, 2, 3, and 4. The general direction of all said tracks was east and west. On the night of February 6, 1902, plaintiff was one of a switching crew of four men employed in making up a freight train of some twenty-five or thirty cars on said track No. 1, the other members of the crew being Tom O'Hara, foreman, Gus Langhoff and Neil McDaniels. The train was about ready to leave the yards when the fact was communicated to James Glaslier, the night yardmaster in charge of the yards, that the air apparatus of one of the cars about midway in the train was defective. He immediately ordered that the car be taken out and kicked on the scale track, saying, "I will ride it down and have it on the hind end by the time you get coupled up." In order that the defective

car might be placed at the rear or east end of the train it was necessary to remove the caboose car from that end and place the "bad air car" between it and the train. About the time the above order was given by the yardmaster it would appear that the switch engine and plaintiff and McDaniels were on the scale track, and the yardmaster gave them an order to go to the rear end of the train, take the caboose off, bring it against the scale track and pick up a car that would be placed there by the road crew of the train, and then place said car and caboose at the rear of the train. Thereupon plaintiff and McDaniels, with the switch engine, went to the rear of the train, which was standing on track No. 1. There they found an unattached caboose, or what in railroad parlance is termed a "dead caboose," and were about to couple the switch engine thereto when they received a signal from switchman Langhoff to return. They returned, and were telling Langhoff that the yardmaster had sent them after the train caboose, when Glaslier himself came up and asked them why they did not do as he told them, and he then repeated his order. Plaintiff and McDaniels, with the switch engine, went back on track No. 1. McDaniels coupled the engine to the "dead caboose" and plaintiff ran around said caboose in order to couple it to the caboose on the rear of the train. A moment afterwards McDaniels heard plaintiff hallow "Neal, I am caught." The cabooses were provided with automatic couplings consisting of movable knuckles, one on each drawhead, and so contrived with reference to each other that when one of the knuckles was open a coupling could be made by simply bumping the cars together. It would appear that the drawheads of the two cabooses were only about eighteen inches apart at the time, and that while plaintiff was in the act of opening one of the knuckles with his hand the train of cars in front suddenly backed and plaintiff's right arm, above

the elbow, was caught between the drawheads of the two cabooses and injured so that it was necessary to amputate it. The evidence showed that while such couplers could be opened with the foot or by means of a stick provided for that purpose, yet it was generally done by hand. Plaintiff's own evidence in that regard was that, "You don't open the knuckles with a club," and that he used it to set brakes with. Defendant's witness, James Glaslier, also testified that this work is generally done with the hand. It was also in evidence that plaintiff had control of the switch engine to the extent that he could, by signal, have it backed further away so as to allow him more room before stepping in to open the coupler; but the plaintiff testified that if he took time to do that "they would send him home." Witness Langhoff also testified that, "If the yardmaster should see him do that, there might be some trouble about it."

At the close of plaintiff's evidence and again at the close of all the evidence defendant asked for an instruction in the nature of a demurrer thereto, which was refused, and defendant duly excepted.

The only point insisted on by appellant for the reversal of the judgment appealed from is that plaintiff was guilty of negligence which contributed directly to his injury.

Contributory negligence is an affirmative defense, and, like any other defense of an affirmative character, the burden is upon the defendant to establish it to the reasonable satisfaction of the jury.

Defendant insists that, according to the evidence, there were three ways by either of which plaintiff might have opened the knuckle of the automatic coupling: First, by having the switch engine backed and the drawheads separated such a distance as would permit him to safely open the knuckle with his hand, if he deemed

it necessary to use his hand; second, by the use of his switchman's stick; third, by inserting his arm in the narrow space between the drawheads, and opening the knuckle with his hand. Plaintiff pursued the latter course in opening the knuckle of the drawhead, and defendant contends that it was the most dangerous way, and that plaintiff must have known that it was so, in view of these facts: That it was night and dark; that he knew the western caboose was in touch with a live locomotive and an intervening string of cars without lights on them; that said locomotive was not at the time where he could signal to it; that while he had no other light than that of his lantern, he went between the two cabooses, the drawheads of which were only eighteen inches apart, and put his arm in imminent peril of being cut off by any little bump from the western engine, which he had no assurance would not give such bump; that he knew the persons in charge of the western locomotive had no notice of the close proximity of the drawheads, or of his determination to assume so dangerous a position.

In 1 Bailey on Personal Injuries, Relating to Master and Servant, sec. 1121, it is said: ''It is a familiar principle which common sense as well as the rules of law ought to teach any one that where an employee of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence.'' The same rule is announced in Moore v. Railroad, 146 Mo. 572; Hurst v. Railroad, 163 Mo. 309; Smith v. Box Co., 193 Mo. 715.

But as to whether plaintiff knowingly selected a dangerous way when a safer one was apparent to him was for the determination of the jury. The verdict of the jury was for the plaintiff, the effect of which verdict was that plaintiff did not knowingly select a dan-

gerous way to open the knuckle of the coupling when he knew there was a safer one.

The question of contributory negligence was presented to the jury by instruction numbered 6, at the instance of defendant. It is as follows:

"The court instructs the jury that although you should find from the evidence that the yardmaster of defendant railway company was guilty of negligence in giving the order for the coupling of the cars, or if you find that the employees of the defendant in charge of the train which was caused to back against the caboose car which was to be coupled by plaintiff were guilty of negligence in so backing said train against said caboose, yet if you further find that the plaintiff was also negligent in attempting to make the coupling under the circumstances, and that his act in so attempting to make such coupling in any wise contributed to his injury, then he is not entitled to recover in this case."

As to whether the plaintiff or switch crew knew that a car was to be taken out of the train and thus necessitate a recoupling, the evidence showed that neither the plaintiff nor any of the switch crew knew where the car was coming from which was to be placed between the caboose and the rear of the train, and that none of them knew the object of detaching the caboose. Plaintiff testified that from where he was at work he could see the west end of the train; that it was not customary for engines to work at both ends of the train, and that he never saw it done before in that yard.

Neal McDaniels testified that he knew nothing of there being anything done at the west end of the train, and that he was not notified that there was.

Gus Langhoff testified that when switching was being done like this was, on the end of a train made up to go out on the road, it was not usual or customary to have the road engine do the switching, and that he

never knew them to work both the road engine and the switch engine at the same time. This witness also testified that he had been working for defendant as a switchman, in the same crew with plaintiff, between nine and eleven months, and had been a railroad man twelve or fourteen years.

This evidence tends to show that it was unusual to do work as it was done at the time of plaintiff's injury, and that there was no warning to plaintiff or anything done to apprise him of his danger. The testimony also showed that plaintiff had no control whatever over the road engine, his work being done with the switch engine, which was standing still, obedient to his signal, at the time the road engine backed and bumped the cars together.

We think the evidence clearly showed the yardmaster was negligent in failing to notify the switch crew that there would be a movement of the train while the work of coupling was being done, and thus forewarn them of the danger.

The instructions are unchallenged, and presented the case fairly to the jury. The verdict is well warranted by the evidence, and should not, in our opinion, be disturbed.

The judgment is affirmed.

All concur.