PATRICK DOWLING, Appellant, *v.* GERARD B. ALLEN & COMPANY, Respondent.

**November 6, 1878.**

1. Where dangerous machinery is so placed that the danger is hidden, so that to an inexperienced person the machinery may appear safe, and an inexperienced employee, who had no warning of the danger, is injured by such machinery while in the regular course of his business, he is not necessarily precluded from recovering against his employer on the ground of contributory negligence.

2. Where the language of a witness, though ambiguous, is fairly susceptible of an interpretation which makes out a *primâ facie* case for the plaintiff, it is error to take the case from the jury.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

FISHER & ROWELL, for appellant: Negligence. —*Combs* v. *Cordage Co.,* 102 Mass. 572; *Whalen* v. *Church,* 62 Mo. 326; *Conroy* v. *Vulcan Iron-Works,* 62 Mo. 35; *Keegan* v. *Kavanaugh,* 62 Mo. 233; *Dale* v. *Railroad Co.,* 63 Mo. 455; *Cook* v. *Railroad Co.,* 63 Mo. 397; *O'Flaherty* v. *Railroad Co.,* 45 Mo. 70; *Pattison* v. *Railroad Co.,* 76 Pa. St. 389; *Steiner* v. *Moran,* 2 Mo. App. 47; *Lynds* v. *Stoneware Co.,* 4 Mo. App. 586; *Mauermann* v. *Siermerts,* 3 Mo. App. 605; *Stoddard* v. *Railroad Co.,* 65 Mo. 514.

MARTIN & LACKLAND, for respondent: Negligence of

master. — *Gibson* v. *Railroad Co.*, 46 Mo. 163 ; *Keegan* v. *Kavanaugh*, 62 Mo. 230 ; *Nolan* v. *Shickle*, 3 Mo. App. 300. Contributory negligence. — *McGowan* v. *Railroad Co.*, 61 Mo. 528 ; *Langan* v. *Railroad Co.*, 5 Mo. App. 311. Negligence of fellow-workmen.—*Marshall* v. *Skinker*, 63 Mo. 306.

BAKEWELL, J., delivered the opinion of the court.

This is an action for damages for injuries done to plaintiff whilst in the employ of defendant, a corporation carrying on a foundry in St. Louis.

At the close of plaintiff's case, defendant offered an instruction in the nature of a demurrer to the evidence, which was granted. Plaintiff then took a nonsuit ; and the court having overruled a motion to set the nonsuit aside, plaintiff appeals.

There was evidence to show the following state of facts : Plaintiff, a boy seventeen years of age, at the request of his father, was hired by defendant. At the time he was thus hired, he had no experience in foundry business or with machinery, and of this fact Fisher, the foreman and general superintendent of defendant's foundry, who hired him, was informed at the time. During the first two months of his service with defendant, plaintiff was employed in running errands and in sweeping out. During the last month, he was employed in the machine-shop and in the yard, where a turn-table was being constructed under the charge of one King, a fellow-servant of plaintiff. The foreman of defendant, who had hired plaintiff, told plaintiff to go with King and do whatever he told him, and plaintiff did so. Plaintiff's father, who was also employed in the foundry, remarked the boy one day working under King's directions at a lathe, and told King that that was dangerous work for the boy, as he was "green." To this King replied that the boy was better and sharper than some of the men, and no more was said at the time. The boy himself told King

that he did not like being employed to help him, and that King had better get some one to take his place; but King persuaded him to remain at the turn-table.

The turn-table was inside the foundry. It was over thirty feet in diameter. Running east from this table, a little south from the centre of it, was a shaft about twelve feet long and about six inches in diameter. This shaft was covered, except for a space of three or three and a half feet nearest the turn-table. The lower part of the shaft was about ten inches above the floor, and it could be stepped over at the part where it was not protected; and the men employed in the foundry were in the habit of stepping over it when going to and fro. At the end nearest to the turn-table the shaft had a collar about an inch and a half thick, and from this collar projected a set-screw about two inches high. The plaintiff says in his direct examination: "The collar was a close fit; I don't exactly know how large the set-screw was. The shaft was between eight and ten inches high. I could step over it easily enough. The shaft revolved rapidly. The set-screw could not be seen when the shaft was revolving. I did not see the set-screw before I was injured." And further on in his direct examination he says: "I had never taken particular notice of that set-screw before I was injured."

At the date of the accident, plaintiff had been working about three weeks at the turn-table with King. King directed him to stop the engine. This was done by pulling a string to shut off the steam. The engine was at the other side of the turn-table. It could be reached in two ways. The shorter way was to cross the revolving shaft. King told the boy to hurry, and he took the shorter way. In stepping over the shaft, the leg of his trousers was caught by the set-screw. His leg was drawn under the shaft, and so badly broken as to render immediate amputation necessary to save his life.

The question whether there is any evidence here from

which the jury might have found the defendant liable to plaintiff in this action, is the one presented for our determination by this record.

It is universally understood that more or less danger accompanies the operating of machinery by steam. Of this danger all intelligent persons must take notice, and the fact imposes duties both upon those who operate the machinery and upon those who are brought in contact with it. If this danger is hidden, — if the machinery be of a character which is not, or need not be, ordinarily, dangerous to those approaching it in a certain way, but is rendered dangerous by some special circumstance of which a person of ordinary experience and intelligence would not take notice, and such a person is permitted or directed by the proprietor to approach this machinery without warning of this danger, and is injured in consequence, it would seem that the proximate cause of the injury is the carelessness of the proprietor. But if the person injured by the machinery is shown to have actual notice of the danger, if he has been warned of the danger, if the danger is apparent when the machinery is at rest, and it may be fairly inferred from testimony that he has seen it at rest, and must have observed the danger, the danger is then no longer to be considered as a hidden one as to him ; and if he then approaches the machinery when in motion, in such a way as to expose himself to this danger, he does it at his own risk.

When a person known to be without any previous experience of the business is employed about machinery which can be safely approached with certain precautions, but which is dangerous if those precautions are not taken, if that machinery lies in a passage-way commonly traversed by those employed about the place, and if, without any warning, in the course of his employment, he crosses this machinery without taking those precautions of the necessity of which he can know nothing, it does not appear that he is guilty of negligence. If he is hurt by the machinery under these cir-

cumstances, this cannot be said to be mere mischance.   The injury might have been avoided had the employer, either by forbidding the use of the passage-way or by any general or special notice, called attention to the hidden danger.

Employers are bound to furnish their employees with a reasonably safe place in which to work, considering the character of their business (*Combs* v. *Cordage Co.*, 102 Mass. 572), and are bound to see that their employees have reasonable notice of any hidden danger known to the employer, but of which the employee might be ignorant without blame, and of which at the time he is hired he may reasonably be supposed to be in fact ignorant.

The difficulty in the present case does not arise from the principles of law as to contributory negligence and the duties of employer and employee.   The trial court declared as a matter of law that, on the evidence, the plaintiff was not entitled to recover; and that declaration was correct, if the only fair inference from the testimony is that this boy, at the time of the accident, knew of the existence of this project- ing screw, which was invisible whilst the shaft over which he stepped was in motion, but which must have been apparent while it was at rest.   If he knew of this screw, he was careless in not crossing the shaft at another point, or in not lifting his foot as he should, or in crossing it at all, for he was not bound to do so, and might easily have gone another way.

It is apparent from the testimony of the boy himself that the machinery was frequently at rest; and if the light was sufficient, one would think that he must, during the three weeks he was in the foundry, have noticed the projection. The boy says that he did not see the screw until after he was hurt.

This statement, taken with his subsequent declaration that he never particularly examined the screw, may be taken to mean that he did not see the screw at the moment of the accident, but that he had seen it before, though he had never

examined it with care. This meaning becomes more obvious when we reflect that this was the important point in the case. The testimony seems ambiguous. We are not, however, prepared to say that it is not fairly susceptible of the meaning given to it by counsel for appellant, and that a jury might not have taken it to mean that the boy had never seen the set-screw at all.

If this was the meaning of this portion of the evidence, plaintiff made out a case which should have gone to the jury. Under the circumstances, after very considerable hesitation, we believe it to be our duty to remand the case.

The judgment is reversed and the cause remanded. All the judges concur.