CLARA BATESELL and NORVELL BATESELL,
by GRACE BATESELL, Guardian and Curator,
Appellants, v. AMERICAN ZINC, LEAD AND
SMELTING COMPANY, Respondent.

**Springfield Court of Appeals, May 19, 1915.**

1. **MASTER AND SERVANT: Injuries to Servant: Use of Dyna-
mite: Knowledge of Danger by Master: Evidence.** Action for
death of servant, occasioned by the explosion of dynamite used
by him in breaking boulders in defendant's mine. Evidence
reviewed and *held* to show that the master had notice, actual
or constructive, of the danger from the use of dynamite by
inexperienced servants, so as to require that they should be
warned.

2. ———: ———: ———: **Servant's Inexperience.** Action for
death of servant occasioned by the explosion of dynamite used
by him in breaking boulders in defendant's mine. Evidence
reviewed and considered to warrant a finding that deceased
was inexperienced in such work and did not appreciate the
dangers of the use of dynamite.

3. ———: ———: **Master's Failure to Warn of Danger: What
Necessary to Establish Liability for.** In order that a master
may be *held* liable for injuries to a servant following a failure
to warn and instruct the servant, there must be evidence
tending to show that the master knew, either actually or con-
structively, that the servant was inexperienced.

4. ———: ———: **Risks Assumed by Servant.** A master has a
right to assume that an adult in accepting or engaging in em-
ployment is competent to perform that work and that he assumes
the dangers ordinarily incident to carrying on the work.

5. ———: **Servant's Lack of Experience: Master Should be In-
formed of.** Where a servant is set to work to do that which
he is not experienced in doing, he should inform the master
of his inexperience.

6. ———: **"Abnormal Risk:" Meaning.** By the term "abnormal
risk" is meant that the master puts a servant at employment
which must be performed out of the ordinary way in which
such work is usually done, or that the master changes the
conditions without the servant's knowledge.

7. ———: **Injuries to Servant: Explosion of Dynamite: Assump-
tion of Risk.** Action for death occasioned by the explosion of

a shot of dynamite used by deceased to break boulders in defendant's mine. Deceased was given work at said mine as a shoveler, the custom there being to allow the shovelers to use dynamite in breaking boulders. Deceased on the first night of his employment saw his fellow shovelers breaking the boulders with dynamite and on the second night he was killed by an explosion while he was so attempting to break the boulders with dynamite. Evidence and circumstances considered and deceased, who was an adult of ordinary intelligence, *held* to have assumed the risk.

8. ———: ———: ———: Contributory Negligence. Where a shoveler in a mine, knowing himself to be inexperienced in the use of dynamite, undertook to use same to explode boulders merely because other employees in the same line of work were allowed to do so, he was guilty of contributory negligence as a matter of law.

**STURGIS, J., Dissenting.**

Appeal from Jasper County Circuit Court, Division Number One.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED. (CERTIFIED TO SUPREME COURT.)

*J. V. McPherson* and *James A. Potter* for appellants.

(1) The court erred in excluding legal and competent evidence offered by the plaintiffs. Overby v. Min. Co., 144 Mo. App. 363; Crane v. Railroad, 87 Mo. 595-596; Deeds v. Railroad, 157 Mo. App. 464; Railroad v. Wright, 115 Ind. 378, 16 N. E. 145, and 17 N. E. 584; Peerless Mfg. Co. v. Denham, 15 Ky. Law, 95; Walsh v. Chicago, 94 Ill. App. 311; Schiller v. Breweries Co., 156 Mo. App. 569; Brunke v. Tel. Co., 115 Mo. App. 36; Hunt v. McNamee, 141 Fed. 293; Holland v. Railroad, 91 Ala. 444, 12 L. R. A. 232; Fortney v. Marble Head Lime Co., 173 Mo. App. 404; Kan. and Tex. Coal Co. v. Brownlie, 60 Ark. 582, 31 S. W. 453. (2) The court erred in sustaining a demurrer to the evidence and in taking the case from the jury. A master is prima facie bound to instruct a servant as to all risks abnormal or extraordinary and of such a kind

that the servant cannot be held chargeable with an adequate comprehension of their nature and extent or of the proper means by which to safeguard himself. The question whether the servant should be instructed and warned is for the jury. 3 Labatt, Master & Servant, sec. 1146, p. 3036-46; Same, vol. 3, sec. 1148, p. 3048-9; Osborn v. Adams Brick Co., 99 N. E. 530; Chinn v. Ferro-Concrete Cons. Co., 132 N. Y. S. 850, 148 App. Div. 368; Hill v. Libby, 85 App. (Me.) 487; Giordano v. Brandywine Granite Co., 52 App. (Del.) 332; Tenn. Coal, I. & R. Co. v. Jarrett, 82 S. W. 224; Peters v. George, 154 Fed. 634, 83 C. C. A. 408; Martin v. At. Transport Co., 85 App. 29, 237 Penn. 15; Lavia v. Kountz Bros., 31 Pa. Sup. Ct. 48; Gammerson v. K. C. Bolt & Nut Co., 171 S. W. 961; Fortney v. Marble Head Lime Co., 173 Mo. App. 404; Brazille v. Caralina Barytes Co., 78 S. E. 215; Railroad v. Daergaard, 118 Ill. App. 67; Railroad v. Valerius, 56 Ind. 511; Penn. Co. v. Long, 94 Ind. 250; Erickson v. Monson Consol. Slate Co., 60 App. (Me.) 708, 100 Me. 107. (3) It is the duty of the master, who finds it necessary to use dangerous agencies in his business, to inform his servants not familiar therewith of the extraordinary risks incident thereto. The duty of warning is said to be especially imperative where the servant is required to handle dangerous explosives. Decatur Cereal Co. v. Boland, 95 Ill. App. 601; Spelman v. Fisher I. Co., 56 Barb. 151; Burrows v. Ozark W. L. Co., 86 Ark. 343; Rankel v. Buckstaff-Edwards Co., 120 N. W. 269; Reickert v. Hammond Pack. Co., 136 Mo. App. 565; Gheron v. Union Carbide Co., 151 Mich. 687, 115 N. W. 718; Pinney v. King, 98 Minn. 160, 107 N. W. 1127; Wood v. McCabe and Co., 151 N. C. 457, 66 S. E. 433.

*Thos. Hackney* for respondent.

(1) Under the allegations of the plaintiffs' petition the burden of proof was upon the plaintiffs to

show not only that Adrian C. Batesel was inexperienced in handling dynamite but also that the defendant had knowledge of such inexperience, and furthermore that knowing his incapacity to do the work of handling and firing the boulder pops the defendant required him to do such work. Nugent v. Kauffman Milling Co., 131 Mo. 241; Smith v. Forrester, Nace Box Co., 193 Mo. 715, 732; Hill v. Meyer Bros. Drug Co., 140 Mo. 440. (2) Even though the affirmative testimony tending to show the experience of the deceased should be disregarded and it should be presumed that he was inexperienced in handling dynamite, yet there is no pretense that the defendant had any knowledge of the alleged inexperience, and hence the defendant is not liable on the theory of its failure to instruct the deceased. Fulwider v. Gas Light & Power Co., 216 Mo. 582-597; Wilks v. Railroad, 159 Mo. App. 725; Murphy v. Rockwell Eng. Co., 70 N. J. L. 374; 57 Atl. 444; 26 Cyc. 1167. (3) The omission of the defendant to instruct the deceased in regard to perils which he fully appreciated to as great an extent as the defendant could have informed him was not negligence. N. Ala. Coal & Iron Co. v. Beacham, 140 Ala. 422, 37 So. 227.

FARRINGTON, J.—During the early hours of the night of August 21, 1912, Adrian C. Batesel, a shoveler in defendant's mine number 3 in Jasper county, who was then about twenty-six years of age, was fatally injured while attempting to explode a stick of dynamite. His widow brought this suit for damages as guardian and curator of his minor children. At the close of all the plaintiffs' evidence the court gave a peremptory instruction to find for the defendant, whereupon plaintiffs took a nonsuit with leave, and they have now appealed from an order overruling their motion to set aside the nonsuit.

It is alleged and the evidence shows that Batesel was killed by the explosion of what the witnesses call

a "pop shot" while attempting to "pop a boulder." He had prepared the shot in the usual way by placing a stick of dynamite on top of a boulder with a cap and fuse attached. Except for a few exclamations, to which we will later refer, he made no statement before his death.

The basis of plaintiff's complaint against the defendant and the negligence complained of in the petition was in substance as follows: That deceased was employed on August 20, 1912, as a shoveler in defendant's mine. That he was inexperienced in the use of dynamite and ignorant of the dangers and risks encountered in the work of firing shots. That defendant knew this, or by the exercise of ordinary care would have known of his inexperience. That it was not customary for shovelers in that mining district to explode dynamite, but that skilled men were ordinarily kept in the mines for such purpose, and such work, unlike that of shoveling, was extrahazardous. That defendant permitted and required its shovelers in this mine to explode dynamite in addition to shoveling, and that when Batesel was employed he was not informed that he would be required to do this dangerous work. That the defendant failed in its duty to warn and instruct him so as to inform him how to avoid the dangers. That on August 21, 1912, Batesel was negligently required and permitted to explode a "pop shot" and that he did it with reasonable care for one of his experience, but that owing to his lack of knowledge and experience and a failure to know how to avoid the risks he was, through defendant's failure to warn and instruct him, killed while "popping a boulder."

The answer was a general denial and a plea of contributory negligence.

It appears that the gravamen of the charge of negligence is that the defendant knowing that Batesel was inexperienced in the handling and exploding of dynamite, a highly dangerous agency, set him to work with-

out giving him warning that he would be required to handle and explode it and failed to instruct and warn him so that he could take precautionary measures to protect himself.

The charge in the petition contains the three elements necessary to fasten liability upon the defendant, namely: (1) The master had knowledge, actual or constructive, of the existence of the risk. (2) That when Batesel was employed by defendant, because of lack of skill and experience, he did not appreciate the dangers of the employment he was entering upon and was therefore excusable. (3) That defendant knew or should have known that Batesel was unskilled in the handling and exploding of dynamite.

The evidence tended to establish the following state of facts:

Batesel was an adult, endowed with ordinary intelligence, good sight and hearing, and bore no external evidence of any infirmity. He had spent most of his life in pursuits other than mining, but had worked a short time as a shoveler in mines in that district. *There is nothing to show that defendant had any knowledge whatever of the past history or experience of the deceased.* Defendant operated this mine in which it employed about twenty-five men on the night shift who would shovel into cans the ore and rock which had been broken from the face of the drifts by dynamite shots, and they were paid by the number of cans filled and not for the time they worked. In this mine when in their work the shovelers came upon a boulder they would themselves break it up by what is called a "pop shot," which they would explode by lighting the split end of the fuse with the lamp they carried. When they had lighted the fuse they would give the alarm by shouting "boulder pop," and this was a warning to all workmen in the danger zone to go behind pillars left in the mine. Ordinarily several minutes elapsed before the dynamite exploded after the fuse was lighted.

There is evidence in the record that the ordinary custom in that mining district is to have special shot firers employed to explode these shots. The evidence shows that defendant permitted its shovelers to pop their own boulders and knew this was their practice but did have employed on the night shift two experienced men for popping boulders.

We find sufficient evidence to sustain the first element of liability.

On the evening of August 20th, while the ground boss of the night shift and the workmen were waiting for the whistle to blow when they would go down in the mine, Batesel appeared and inquired of the ground boss whether he had an opening for a shoveler and was told yes. The evidence tended to establish that he was given no instruction or warning, and in fact there is nothing shown as to any other conversation had with reference to the employment. Batesel went to work and worked throughout the first night. There is evidence that while in the mine during this first night Batesel saw the other shovelers popping boulders. No witness testified to hearing Batesel receive any order to pop a boulder or heard Batesel ask the regular shot firers to pop any for him, and none of the witnesses knew where he obtained the dynamite, fuse and cap used in the shot which he fired the next night and which caused his death. It is shown, however, that these supplies were scattered around the mine near the headings and pillars handy for 'the miners to use. Soon after Batesel went to work the second night he obtained supplies for a shot, and, according to the experienced miner who observed him, prepared the shot as an experienced man would have done. Another shoveler named Merritt, working nearby, was preparing to fire a shot at the same time. Merritt lighted his fuse and shouted the warning. Batesel was down with his lamp in position to light his fuse, and his lamp was lighted just before he (Batesel)—according to witness Hart—

shouted "boulder pop." He was seen to hold his carbide lamp down to the end of the fuse but the fuse was not seen to "spit" or show evidence of being lighted. All the workmen went to the pillar for safety and while there Merritt's shot exploded. Batesel asked one of the shovelers to give him a light as his lamp was out and he said he did not get his fuse lighted. The shoveler from whom he got his lamp lighted told him he had better wait and Batesel replied, "I did not get mine lit," and said he was going back to light his and that he had tried to light it but failed to get a light. Batesel did return and as he came near the boulder the charge exploded and injured him so that he died within ten minutes. Soon after he was injured he said: "I lit the shot myself and didn't think it was lit and went back on it"—and other statements to the same effect.

The evidence shows that in the firing of these shots an experienced man will know when a fuse is lighted; he will know that it "spits" but once and that is when it is first lighted; also, that if a lighted lamp is held directly in front of the split end of the fuse it will be extinguished by the "spitting;" that a fuse when it is burning will move or crawl, and that there is given off a certain odor from a lighted fuse which he will recognize; and he will know that when a fuse of the kind and length used in this instance is once lighted it ordinarily requires two or three minutes for the fire to reach the cap and explode the shot, but that, as an experienced man, after lighting a fuse, he must not go back to the shot for at least ten to twenty minutes. The evidence will bear the inference that because of a lack of experience or knowledge Batesel did not know that he had in fact lighted his fuse and laboring under that ignorance went back to the shot and was injured.

There is sufficient evidence from which the jury might find that Batesel was inexperienced and that the second element of liability is satisfied by this record.

Batesell v. Am. Zinc, Lead and Smelting Co.

We come now to the most difficult point in the case, namely: Is there any evidence tending to show that the master knew or had reason to know that Batesel was inexperienced in the work of boulder popping? This necessarily raises the question, Did the deceased so act and conduct himself as to bring home to the defendant the knowledge that he was not experienced and skilled in the work he was set to perform? Or, as a last analysis, Did the deceased assume the risks which necessarily accompanied the work of boulder popping?

In order to hold the master liable for injuries to a servant following a failure to warn and instruct the servant, there must be some evidence tending to show that the master knew, either actually or constructively, that the servant was not experienced. [Fulwider v. Gas, Light & Power Co., 216 Mo. l. c. 597, 116 S. W. 508; Wilks v. Railroad, 159 Mo. App. l. c. 725, 141 S. W. 910.] To hold a master negligent on constructive knowledge of inexperience there must be something to suggest that warning and instruction is necessary. In this case, there is no evidence whatever that the defendant had actual knowledge of Batesel's inexperience, if in fact he was inexperienced. But it is argued that because it was not customary for shovelers in that mining district to do their own boulder popping when the deceased applied for work as a shoveler the master should have known that he would not know how to do the work that would be required of him in this mine—that is, to fire shots. We do not think this is enough (in the absence of anything else, and there is such an absence in this record) to charge the defendant with knowledge that this full-grown man with no outward sign of deficiency or incompetency was inexperienced. A master has a right to assume that an adult in accepting or engaging in employment is competent to perform that work and that he assumes the dangers ordinarily incident to the carrying on of the work. [3 Labatt on Master & Servant (2 Ed.), sec.

1148 and sec. 1082; Murphy v. Rockwell Engineering Co., 57 Atl. 444; Hardy v. Railway Co., 115 N. W. l. c. 10 and 11; 26 Cyc. 1172 (3); 2 Bailey on Per. Inj. (2 Ed.), sec. 355; Id., sec. 356, on page 952; Johanson v. Webster Mfg. Co., 120 N. W. 832; Kerker v. Bettendorf Metal Wheel Co., 118 N. W. 306, 310.]

But suppose it be granted that because defendant did know that Batesel had only applied for work as a shoveler and that ordinarily shovelers do not have to fire shots and that from this defendant should have taken notice that Batesel was inexperienced from which a duty to instruct in the use to which he was to put the dynamite would follow, can it be said that a failure to warn him and instruct him when first employed on top of the ground was the proximate cause of his injury?

A shoveler, as generally understood in that district, must know that boulders are to be broken up by the use of dynamite, fuse and cap, and that men specially employed to do that work are on hand. He must therefore know that that is a special employment outside of what he contemplates when he goes down into the mine to work as a shoveler. He must know that it required special men to do that work, that there was a certain skill or experience necessary, and that the exploding of dynamite was necessarily accompanied with certain risks and dangers.

It will not be denied that had Batesel applied to the ground boss for a job as a shot firer and nothing more had been said he would thereby have held himself out as capable and experienced in doing that character of work, and the defendant, in such a case, would have had a right to assume that he knew about it and would have been under no legal duty to warn and instruct him as to shot firing. [3 Labatt on Master & Servant, (2 Ed.), sec. 1145.]

Now when Batesel asked to become a shoveler, it must be conceded that had he been informed before

going into the mine that shovelers in that mine must also engage in the work of shot firing, and he had accepted the employment without more, the duty of the master would have been satisfied, because, by knowing that he would be required to handle and explode dynamite as a shot firer, and, after becoming aware of that fact accepting the employment and engaging in the work of shoveling and shot firing, he would have held himself out as experienced and able to do the work. Because of such conduct the master would not have been required to give warning or instruction.

But Batesel did go into the mine and work the first night, and while in there he saw and observed that the shovelers in that mine fired their own shots, from which fact alone it is claimed he had a right to infer that to fire the shots was a regular part of his duties as contemplated by the defendant when employing him as a shoveler. Batesel realized what his duties under his employment would require him to do; otherwise, he would have had no right to attempt the work of popping boulders. Plaintiffs base their case on the theory that Batesel inferred that he had a right to fire his own shots merely from his observation of the other shovelers doing so, because there is no showing that he was ordered to do that work. Therefore, if the master failed to warn him that as a shoveler in that mine he would be required to fire shots, Batesel nevertheless had that knowledge brought home to him and knew during the first night in that mine what would be expected of him; hence, before he went back the second night he understood what a shoveler's job meant in the defendant's mine—as much so as though he had been told by the ground boss when he applied for work; and we find him with that full knowledge going back to the mine without any objection or hesitation on his part and without any request for instructions or intimation that he was not familiar with the work, and preparing

190MA16

a shot and ready to explode it early the second night— and he is said by the plaintiffs' witnesses to have prepared the shot as an experienced miner would. So that even though it be admitted that defendant was negligent in failing to inform Batesel at the time of employing him that his duties in that mine as a shoveler would require that he fire his own shots, yet that information came to him through his own observation when he went into the mine the first night to work.

The following rule is laid down in 3 Labatt on Master & Servant (2 Ed.), sec. 1144: "The juridicial consequences of constructive knowledge being the same as those of actual knowledge, it follows that no duty to instruct a servant can be predicated in a case in which the instruction will not add to the knowledge which, under the circumstances, is attributed to him."

When Batesel saw what shovelers were permitted to do in that mine, the danger was not concealed. It was his experience or inexperience that was then concealed.

We are not at this time measuring Batesel's conduct to determine whether he was guilty of contributory negligence, but as to what he was holding himself out as able and capable and experienced in doing after knowing he was to explode dynamite and engaging in such work. The question, therefore, as to him going on or quitting his employment in the light of whether he was careful or negligent is not before us, but only the question of whether his conduct was such as to show that he was holding himself out as an experienced man in this line of work.

We are not dealing with a case where a man is employed as a common laborer and is taken out of that regular work and temporarily placed in a dangerous occupation. The authorities make an exception to the general rule of assumption of risk under such circumstances. [Schlavick v. Shoe Co., 157 Mo. App. 83, 137 S. W. 79.]

But here we have a workman who went into defendant's mine and saw that his ordinary and customary, not temporary, duties would permit and probably require him as a shoveler in that mine to handle and explode dynamite; it was to be his regular employment and he would be subjected to the ordinary risks that accompanied that employment in that mine.

The rule is laid down in 2 Bailey on Personal Injuries (2 Ed.), sec. 361, as follows: "The risks assumed by a servant are not limited to those existing and known to the servant at the time of his employment, but include those which arise during the service, the same as if they had existed when he entered the service."

In 1 Shearman & Redfield on the Law of Negligence (6 Ed.), sec. 221, p. 643, the following rule is announced in speaking of the duties of a servant to warn and complain: "They also owe a duty of warning their masters of defects in themselves, which make the work dangerous to them. Thus, a servant who is set to do work to which he is unaccustomed, and which he does not understand, ought to inform his master of that fact; and if, for want of such warning, he is kept at work for which he is unfit, and suffers injury thereby, he is himself in fault, and cannot generally recover damages." [See, Johnson v. Devoe Snuff Co., 41 Atl. 936; Mundle v. Hill Mfg. Co., 30 Atl. 16, 18; St. Louis Cordage Co. v. Miller, 126 Fed. 495.]

In the case of Murphy v. Rockwell Engineering Co., 57 Atl. 444, the court we think declares the true rule as to an adult's assumption of risk by engaging in certain work.

In Millar v. Madison Car Co., 130 Mo. 517, 31 S. W. 574, an adult was employed in the pattern shop of a foundry and was sent without objection on his part to another department, and, without informing himself as to the method of operating a certain machine where he was to perform certain duties, began working and.

was injured.  The court used the following language:
". . . but if it be true that it was not originally with-
in the scope of his employment to measure the die, he,
of course, knew it when he received the order, and he
made no protest or objection of any kind, and when he
voluntarily undertook the performance of this new
duty, if such it was, he must be held to have assumed
the ordinary risks pertaining to such employment."

Plaintiffs assert that the difficulty with defendant's
contention is that it loses sight of the full duty of the
master to the servant in reference to warning and in-
structing an inexperienced servant as to abnormal and
extrahazardous risks and dangers.

The cause of the death of Batesel was not due to
an abnormal risk or danger.  There is nothing any more
abnormal about a stick of dynamite exploding when
prepared with a lighted fuse and cap than there is that
a cake of dough will not explode under the same condi-
tions.  The fact that there is an extrahazardous occu-
pation does not necessarily make the risk abnormal or
extraordinary.  It does not follow because a risk is
great that it is abnormal.  The dynamite in this case
did exactly what it was intended to do and must be
expected to do under the same conditions at any time
or place.  What the law counts an abnormal risk is
putting a servant at employment which must be per-
formed out of the ordinary way in which such work is
usually done, or in which the machine or instrumen-
tality used usually performs or works, changing the
conditions without his knowledge.  For instance, in the
use of explosives, if a master has been furnishing a
certain kind of explosive to be used in his work with
which his servants are familiar and then without warn-
ing puts in an explosive apparently the same but in fact
of a much more dangerous character, and a servant is
injured by reason thereof, or, if a master has been fur-
nishing a certain kind of fuse which required five min-
utes to burn and explode the dynamite and should

change to a fuse apparently the same but which required but two minutes to explode the dynamite and by reason thereof a servant is injured, there would in either instance be liability on the master for subjecting his servant to the abnormal condition of doing the work—made abnormal because the change had been made in the instrumentality; the master had changed the ordinary condition, and the servant would have a right to rely on the ordinary condition or normal condition as he had known it theretofore to exist. It must be borne in mind that the charge in our case is not furnishing an unsafe place in which to work caused by any defect in the instrumentality furnished, nor that there was an abnormal or extrahazardous risk occasioned by any defect or change from the ordinary method of doing the work, the charge being (and the real cause of Batesel's death was) that on account of his inexperience he did not know when a fuse was lighted, and that defendant knew of this ignorance on the part of Batesel or ought by the exercise of ordinary care to have known of it and failed to enlighten him. If popping boulders made the risk of Batesel's employment abnormal it was solely because of his inexperience, and before there can be a liability for an injury growing out of any abnormal risk, the master must know or have reason to believe that abnormal conditions exist. The proof certainly fails to show that there was any knowledge on the part of the defendant one way or the other as to Batesel's experience or inexperience. Offering himself as a shoveler without more did give the defendant the right to believe that he knew what boulder popping was in mining because as a shoveler in that district he would call on skilled men to do that work for him.

Appellants contend that there must be "such instruction as will enable him to avoid injury," citing 3 Labatt on Master & Servant (2 Ed.), sec. 1159, p. 3078. Upon turning to that text we find that what is there said is with reference to and under the heading of

"Sufficiency of the instruction," so that the author is
dealing with a question, *presupposing* that notice has
come to the master of the servant's inexperience—pre-
supposing as an established fact the very question we
have to decide here, which is, Is there any evidence that
brings home to the master the knowledge of the alleged
inexperience of Batesel? So, also, as to 1 Bailey on
Personal Injuries, sec. 309, pp. 665, 666. These two
text-writers cite cases to support their text, an exam-
ination of which will reveal that in those cases either
youth or some other positive or direct evidence about
the servant was known to the master that would be
some notice to him or to a reasonable man that the
servant was inexperienced.

If Batesel's ignorance of the special experience re-
quired is excusable, it may also be said that the ig-
norance of Batesel's ignorance is excusable, under the
facts.

Our attention has been directed to 3 Labatt on
Master & Servant (2 Ed.), sec. 1146, p. 3036, which, we
find, is dealing with the question under the head of
abnormal and extraordinary risks. We have already
discussed this, but the note under this section cites
many cases, and we will look for a moment at the Mis-
souri cases there cited: In Edington v. Railroad, 204
Mo. 61, 102 S. W. 491, where, in the work of coupling
cars it was not usual for an engine to work at each end
of the train, on the particular occasion there were two
engines working which was unknown to the switchman
who was injured, and because he was not notified by the
yardman that the coupling of this train was out of the
ordinary—was abnormal, and involved an extraordi-
nary risk—the master was held liable. Would there
be liability had the switchman seen for himself that
there were two engines working? In Schlavick v. Shoe
Co., 157 Mo. App. 83, 137 S. W. 79, we find it said that
a boy seventeen years of age was peremptorily ordered,
although objecting, that unless he did the work of re-

moving something from a revolving shaft he would be discharged.

What is said by Labatt (Vol. 3, sec. 1148, pp. 3049, 3050) is more applicable to the question with which we are dealing: "For the purpose of applying that distinction the courts start with the fundamental hypothesis that, by entering an employment in any capacity, an adult holds himself out as being competent to perform the duties of the position; or as the rule is also expressed, that the acceptance of any given employment is a representation that the servant understands the nature of the service."

The same text-writer (Vol. 3, sec. 1082, p. 2867) in discussing injuries occasioned by the act of the unfit servant to himself says: "The effect of his knowledge is to bring the situation within the scope of the principle, that, if a person of apparently full age and complete understanding undertakes certain duties, he is presumed to appreciate and accept the risks incident to those duties." And the note thereunder is as follows: "Accordingly, an employer who is hiring a man twenty years of age is not bound to examine him as to his experience and capacity with a view to ascertaining whether he needs instruction as to the dangers of the work. [O'Neal v. Chicago & I. R. Co. (1892), 132 Ind. 110, 31 N. E. 669.]"

In this case it cannot be said that because to an inexperienced servant the danger of not knowing when a fuse is lighted is latent and therefrom springs a duty to warn, for the reason that as to whether it was a latent or patent danger all resolves itself back to whether the servant was in fact inexperienced, and the duty springs from notice thereof; to an experienced man the danger would have been patent, while to an inexperienced man it would have been latent. Before a duty to warn attaches, we must first ascertain whether from the evidence there was anything in Batesel's personal appearance or conduct, or whether there was any no-

tice to the defendant of his inexperience, that would make the master know or have reason to believe that to Batesel the danger would be latent.

It is said by Labatt (Vol. 3, sec. 1148, pp. 3051, 3052): "On the other hand, unless the defendant knew, or ought to have known, of some occasion for instruction, his omission to give it cannot be regarded as the proximate cause of an injury which the plaintiff received owing to the want of such instruction. The mere fact that he was injured because he was inexperienced or ignorant of the danger and hazard will not suffice to charge the defendant." Following the above language, what the author says as to a jury question is supported by cases cited in the note thereunder, an examination of which will reveal that in each there was some notice brought to the master from which inexperience could be inferred, and hence it became a question "under all the facts" for the jury.

We have gone extensively into this question because it will not do to rely upon excerpts from textbooks or from legal opinions without first ascertaining just what state of facts was under consideration when the language employed was used. We therefore must read into what was said by the court in the case of Vitto v. Farley, 36 N. Y. Supp. 1105, the facts set forth in the opinion that a common laborer known for two months to be merely such was taken out of a regular position and put to doing extrahazardous work. We quote from that opinion on page 1105: "No common laborer could, with due regard to safety, be permitted to undertake it, no matter how willing or eager he might be, *unless he were first told what the blast contained,* or interrogated as to his knowledge." (Italics are ours.) If knowing "what the blast contained" would excuse the master in that case, why would not knowing that he was to explode dynamite, which Batesel saw for himself, not excuse the defendant on our case?

While he was not told what shoveling for the defendant meant when he was hired, Batesel found that out for himself the first night he worked; he therefore knew what he was expected to do, which relieved the master of conveying to him the then useless information that he would be expected to handle and explode dynamite and pop boulders.

In the case of Warren Vehicle Stock Co. v. Siggs, 120 S. W. 412, the servant's eyesight was defective and he had so informed the foreman, and the opinion starts out by stating that there was evidence tending to show that the foreman knew he was inexperienced.

In the case of Felton v. Girardy, 104 Fed. 127, the court was dealing with a case where a man in defendant's employ was ordered to do that which required skill and experience and the master had notice of his inexperience by what he said, to-wit: "Well, I don't know what to do in there, and I don't know how to do it."

The holding in the case of Louisville & N. R. Co. v. Miller, 104 Fed. 124, has our approval.

The rule declared in Pinney v. King, 107 N. W. 1127, was applied to a master who took a minor from his regular employment and put him to handling dynamite. More notice of his inexperience also came to the master as is shown on page 1128: "It appears that he was nervous and somewhat agitated during the time the dynamite was being warmed, because, in his opinion, the boiler was overheated, and that he called the attention of the foreman to the fact. The foreman assured him that it was all right, and ordered him to let it alone."

In Dell v. McGrath, 99 N. W. 629, we find this language: "At the beginning of the employment, plaintiff was a young man, twenty-one years of age, and without any experience whatever in the logging business, *which fact he communicated to defendant.*" (Italics are ours.)

As to what character of cases the language used by Labatt (Sec. 1151, p. 3059) applies will be seen by reading the authorities cited in support of the text, in all of which there was brought home to the master either notice of minority or some other positive fact from which a reasonably prudent person would naturally infer inexperience.

What is said in Gray v. Commutator Co., 89 N. W. 322, is with reference to a minor (something from which inexperience might be inferred) operating a machine about which it could not be said that to operate was dangerous, apparent to everyone. This machine was out of repair and for that reason did not work like the one on which the servant had been employed. The machines, although apparently the same, were different, which was unknown to the operator, making the case fall within the rule as to abnormal risks.

In Welch v. Bath Ironworks, 57 Atl. 88, plaintiff, a common laborer, who was not using dynamite in his work, was set to picking dirt at a place where the day before the master had failed to explode a charge. The plaintiff was unaware that there was any dynamite where he was at work and in no way was he using or attempting to use dynamite in his employment or to have anything to do with it. The place where he was set to work was, so far as he knew, free from dynamite. He was, therefore, without being told or able to see for himself, subjected to an abnormal risk. The rule therein announced would be applicable to our case had the defendant sent Batesel to shovel and he had in shoveling been killed by striking his shovel against and thus exploding a charge of dynamite which he did not know was there.

In Marklewitz v. Olds Motor Works, 115 N. W. 1000, the notice of inexperience was in setting at a dangerous task a sixteen year old boy who had been employed to *learn* the trade.

In Mather v. Rillston, 156 U. S. 391, 39 L. Ed. 464, the plaintiff was taken from his regular employment of loading tram cars and set to work near where some dynamite used by the defendant exploded. He was not handling or touching or in any way meddling with the explosive or attempting to do anything with it. It was discharged by the jarring of machinery.

In Dowling v. Allen & Co., 6 Mo. App. 195, the plaintiff was a boy seventeen years of age, and, when hired, *the foreman was informed,* had no experience.

Plaintiff was thirteen years of age in the case of Coombs v. New Bedford Cordage Co., 102 Mass. 572.

Our attention has been called to the case of Bromley v. Smith, Beggs & Rankin Machine Co., 12 Mo. App. 594. The law has never been declared that the use of all machinery whether running or idle is an unusually hazardous business, and that to operate all machinery requires much skill and experience, and that ordinary intelligence tells the average man that to work about machinery is, by common knowledge, extrahazardous employment. But the law does say that the average man, regardless of his occupation, is held to a knowledge that to explode dynamite is coupled with great danger and is done with extreme risk even to skilled users thereof. When the ordinary man once knows that he is using or meddling with dynamite he knows that if it is not handled with care and skill danger is in his pathway, and when he attempts to explode dynamite, knowing that what he is doing is trying to explode it, he must be held to assume the risk that goes with that occupation. Working with some machinery is not extrahazardous. Can the same be said of any dynamite?

When an inexperienced man is working under the eyes of his master his inexperience will become manifest, and if he works for a long enough time for a reasonably prudent man to see his inexperience, notice of the same can be said to have come to the master; at least it becomes a jury question whether under such

circumstances the master did have notice. The plaintiff in Deeds v. Railroad, 157 Mo. App. 464, 137 S. W. 1013, was inexperienced and had worked for about two weeks before he was injured, and it therefore was a jury question whether the master had notice of his inexperience.

In Naughton v. The Laclede Gaslight Co., 123 Mo. App. 192, 100 S. W. 1104, the person injured, set to performing the dangerous task of cleaning out ashes from under a boiler which he had never done before, had worked in defendant's blacksmith shop for about two months. There is no evidence that he knew as a blacksmith that to clean out the ashes would be extra-hazardous (as a blacksmith or as any other man of ordinary intelligence does know that exploding dynamite is extrahazardous). The opinion in that case shows that there was some evidence that defendant knew that Naughton was inexperienced because it discloses that the vice-principal did undertake to warn and instruct him. The trouble there was that, recognizing his inexperience, the master did not give him *sufficient warning and instruction*. The giving of some instruction to him was some evidence from which it could be inferred that the master knew of the servant's inexperience. When the duty to instruct once attaches it must be sufficient to protect. In our case we are to determine whether the duty to instruct at all arose.

It becomes apparent that it will not do to apply the law as declared in cases where the evidence or notice of inexperience is assumed as an established fact from the evidence introduced, nor as declared in cases where the injured servant is taken temporarily out of one employment and placed at a different and hazardous employment, nor where a duty to instruct has arisen and there is insufficient warning, nor cases involving abnormal risks, nor the rule stated in the cases where a servant is peremptorily ordered to perform a dangerous task and does so through fear of losing his

employment. The defendant in our case was dealing with an adult, from all appearances physically and mentally fit, with no knowledge as to what the servant's experience was one way or another, and engaged him to work not in a temporary employment but at a permanent occupation. We think the law clearly is that some positive notice of inexperience is required, rather than a mere absence of evidence of experience, to fasten liability on the employer under the third element necessary to a recovery, to-wit, notice of inexperience. To hold otherwise would in all cases place on the master the burden of proving that he had knowledge of the servant's experience, rather than requiring the plaintiff to carry the burden of proving knowledge of inexperience. It would make the master an insurer. It is for the protection of the public and fellow-servants where it is proper to ascertain the qualifications of applicants of unknown experience.

We hold that there was a failure of proof as to the third element necessary to a recovery; and that Batesel, when he voluntarily undertook to fire his own shot, with full knowledge of the character of the work he was undertaking to perform, having relieved the master of informing him that it would be necessary to pop boulders if he worked as a shoveler in that mine by his own observation the first night he worked there, by engaging in the work, impliedly held himself out and contracted with the defendant as being an experienced workman in that line of work and thus was charged with assuming all risks ordinarily incident to shoveling and popping boulders as done in defendant's mine; and to be injured in that line of work by a failure to know whether a fuse is lighted is a risk that is ordinarily incident to that occupation.

On the other hand, admitting that the defendant was negligent, Can a full-grown, ordinary, man, who not only must know that to explode dynamite is extremely hazardous but as a shoveler at least for some

time in that district also knew that boulder popping is a work requiring skilled and experienced men furnished specially to do it, and knowing that he is inexperienced and has never attempted it, voluntarily undertake the job because he sees someone else doing it, and yet claim that in such conduct he is exercising reasonable care for his own safety? We think not. If inexperienced, he, by undertaking a work so glaringly dangerous, or by going back to the charge after having been warned not to do so by an experienced miner, is guilty of negligence as a matter of law. The answer pleaded his negligence and the evidence offered by the plaintiff sustained it.

Under any view the result reached by the learned trial court is correct.

The judgment is affirmed. *Robertson, P. J.,* concurs. *Sturgis, J.,* dissents in a separate opinion requesting that this cause be certified to the Supreme Court, and it is so ordered.

## DISSENTING OPINION.

STURGIS, J.—That there is abundant evidence tending to show that plaintiffs' father was inexperienced in the work of breaking large boulders by dynamite is clear. He enlisted in the army at eighteen or nineteen years of age and served three years. He returned from this occupation about three months before his marriage to the mother of these plaintiffs. After such marriage he followed farming for the most part, though working for a time as a section hand on a railroad. What little mining work he is shown to have done before his injury, not exceeding two weeks, is shown to have been done as a shoveler, filling dirt and rock broken loose by other men into cans with a shovel and moving these cans on tracks for a short distance to be lifted to the surface. The evidence tends to show that in the mine where he thus worked as a shoveler,

such occupation did not involve breaking boulders too large to be handled by means of dynamite, such work being done by men employed specially for that work. There is no direct evidence that plaintiffs' father had the slightest experience in exploding dynamite for any purpose or that he had at any time prior to his attempt to fire the fatal shot in question ever exploded a shot of dynamite with cap and fuse.

It is not shown where he obtained the stick of dynamite used on this occasion except that material for this purpose was kept at hand in various parts of the mine. It is fairly inferable from the evidence that the dynamite was already prepared, or nearly so, for firing and exploding and that practically all the deceased did was to pick up the prepared material, lay it on top of the boulder to be broken, place a shovelful or two of earth on the same and attempt to light the fuse with his miner's lamp. Some stress is laid on the fact that he did this in the usual and approved way. It is possible, if not probable, that deceased learned how this was done by seeing others do it.

The real danger in using dynamite is of course in exploding the same. In this particular case the danger arose from the fact that the deceased thought the fuse had not been lighted, when in fact it had, and in returning to relight it just at the time it exploded. His every act shows that deceased firmly believed the fuse had not been lighted though there were signs present indicating to an experienced man his mistake. The evidence shows that it is very dangerous to use dynamite in the manner and for the purpose here shown except by one having knowledge and experience enabling him to avoid or minimize such dangers.

The court should have admitted the evidence showing that in mining operations, as generally carried on in this district, the work of "popping boulders" with dynamite was not entrusted to common laborers, such as shovelers, but to men specially chosen and skilled in

this work. This has a tendency to show that such work was recognized by those carrying on this work as requiring special knowledge and skill to minimize such danger and also as showing that deceased, in applying for and accepting the job of shoveler, was not contracting to break boulders with dynamite or holding himself out as competent to do such work. There is evidence, however, in the record showing that, in the mine where deceased had acquired what little experience he had, he had worked as a shoveler and such work did not involve "popping boulders" with dynamite; and defendant, by cross-examination of the witnesses, attempted to show that this defendant had employees specially skilled in this work and whose special duty it was to perform the same.

There can be no question, therefore, that the evidence tends to establish that the work of breaking boulders by use of dynamite is attended with great danger to one not skilled in such work and of which an unskilled laborer would be excusably ignorant and that defendant had knowledge, both actual and constructive, of these facts. It is also apparent that the evidence is sufficient to take to the jury the question of deceased being unskilled in this kind of work and ignorant of the proper method of avoiding its dangers and that his non-appreciation of the risks involved in doing the acts resulting in his death is excusable.

The only question for serious determination is as to whether there is sufficient evidence to charge defendant with knowledge of deceased's ignorance and inexperience so as to impose on it the duty of warning and instruction as to such dangers. The defendant asserts that, conceding that such work is attended by great danger to one not experienced and that deceased was in fact inexperienced, yet that deceased, by applying for and accepting this employment, held himself out as being competent to perform these duties and that he contracted to assume the dangers and hazards of the ser-

vice. [3 Labatt's Master & Servant, sec. 1145, p. 3032, and sec. 1148, p. 3050; 1 Bailey on Personal Injuries, sec. 301, p. 646.] This contention, however, is not borne out by the facts of this record nor by the law applicable to such facts. The deceased did not apply for employment involving the use of dynamite to break boulders. The whole evidence is that he applied for a job as shoveler, a work having nothing to do with exploding dynamite, and that such work did not in the mine where he had previously worked, or usually in that district, carry with it the work of "popping boulders" with dynamite. By applying for the work of shoveler, he held himself out as competent to do that kind of work and assumed the risks usual and ordinary in that employment. Nothing whatever was said to him by his employer that in accepting the job of shoveler he would also be required to break with dynamite boulders too large to be handled. He did not hold himself out as competent to do that kind of work or as competent to apprehend and avoid its hazards. He did not contract to assume the risks incident to such hazardous employment.

But it is said that, after deceased applied for and contracted to do the work of a shoveler, on going to work in the mine he must have at once observed and known that the shovelers were doing this additional work of "popping boulders" with dynamite and that no special employee was provided by defendant to do this work for him. This, it is claimed, was telling him by acts just as strong as by commands that the work of a shoveler included the work of breaking boulders with dynamite and that he, by then accepting and continuing in the work, accepted the extra duty thus imposed on him and by so doing must also be held to have accepted the extra hazards. It is apparent, however, that it is not material that deceased was by force of circumstances put to his election on the first day of his

work to either quit the employment or accept the extra duty and hazard thus imposed on him. It would not be different if this condition confronted him a week or a month after he began his work, except as it might bear on the question of his experience.

The difficulty with defendant's contention is that it loses sight of the full duty of the master to the servant in reference to warning and instructing an inexperienced servant as to abnormal and extraordinary risks and hazards. It is not generally sufficient that the master merely informs the servant that there is danger or the source from which the danger comes. There must be ''such instruction as will enable him to avoid injury.'' [3 Labatt's Master & Servant, sec. 1159, p. 3078.] ''The instruction and warning must be accompanied with such explanation as will enable the servant to understand it. And where required to perform dangerous work, the master must instruct him fully as to the safest mode of doing such work, and warn him of liability to special danger, of which he is not aware.'' [1 Bailey on Personal Injuries, sec. 309, p. 666.] The deceased received no instruction so as to enable him to avoid the dangers of using dynamite and, while he doubtless knew that dynamite was dangerous, yet his ignorance of the extent of its dangers and how to avoid same is, by reason of his inexperience, excusable. [Porter v. Railroad, 71 Mo. 66, 80.] No employee can be held to assume risks which are unknown to him or dangers which, by reason of his inexperience, he does not comprehend. ''A master is prima facie bound to instruct a servant as to all risks which are abnormal or extraordinary and at the same time of such a kind that the servant cannot be held chargeable with an adequate comprehension of their nature and extent, or of the proper means by which to safeguard himself. (The same rule, of course, applies even if the danger is from an extraneous source, and not one arising out of the work itself, provided the master is chargeable

with knowledge and the servant is not.) The presumption is that all risks which belong to this category are not known to the servant. Hence, the question whether the servant should have been warned is always for the jury where the evidence is fairly susceptible of the construction that the peril to which his injury was due was one of this description, and there is no positive evidence tending to charge him with actual or constructive knowledge of that peril. This principle is equally applicable whether the risks in question existed at the time when the servant commenced the performance of his contract, or were afterwards created by some material change in the intrinsic condition or relative arrangement of the instrumentalities by which the work was being done, or the substances which the injured person or his coemployees were required to handle." [3 Labatt's Master & Servant, sec. 1146.]

The only thing which excuses the master from his duty to warn and instruct the inexperienced servant, as to hazards and dangers not usually comprehended by the inexperienced, is that in applying for the employment the servant holds himself out as being capable of performing the work with its attendant dangers and as knowing and comprehending the same. But, where hazardous work is imposed on a servant by force of the circumstances under which he works, or by direct commands from the master, then the element of the servant holding himself out as being qualified and knowing the dangers is wholly lacking and the master cannot be relieved of the duty to warn and instruct the inexperienced servant. [3 Labatt's Master & Servant, sec. 1082.] In 1 Bailey on Personal Injuries, section 301, in speaking of the duty to instruct and warn inexperienced servants, "where the servant says nothing about his experience and the master knows nothing in regard thereto," the rule is laid down that, "if the servant is ignorant and inexperienced, it is a duty to warn him of dangers not obvious to one without ex-

perience; but there is no duty to notify or instruct him as to dangers which are open and apparent to every person.''

Why should the servant who is inexperienced and ignorant of the dangers of doing a certain work, imposed on him impliedly or by direct command, be held to assume the risk of so doing, when nothing has been said or done by the servant to indicate that he is experienced or knows of the dangers? Can a master, who knows the great danger to an inexperienced man in doing a particular kind of work, shut his eyes and assume, without any knowledge on the subject or attempting to acquire any, that every adult man in possession of his ordinary faculties has the skill and experience necessary to do that work which can be done with safety only by the few who have by experience and training acquired such knowledge? I think not. The very fact that the danger is such that the work can be done safely only after experience and training is a fact which must be taken into consideration in determining the master's negligence in directing or permitting a servant to engage in such extrahazardous occupation. In Vitto v. Farley, 36 N. Y. Supp. 1105, the court held that: ''The act of the foreman in directing the plaintiff, a colaborer employed to break stones and drill holes, to draw a charge from a blast, without ascertaining what his knowledge or experience was, cannot be regarded other than as negligence. This work required a certain amount of skill, and the foreman was not justified in assuming that every laborer who might obey the order to perform it had the necessary knowledge or experience. No common laborer could, with due regard to safety, be permitted to undertake it, no matter how willing or eager he might be, unless he were first told what the blast contained, or interrogated as to his knowledge.'' It is held in Warren Vehicle Stock Co. v. Siggs, 120 S. W. 412, that: ''It is the duty of the master to see that the servant is

competent for his position," and Justice LURTON, in Felton v. Girardy, 104 Fed. 127, and in Louisville & N. R. Co. v. Miller, 104 Fed. 124, held that even where the servant represented that he had knowledge of and experience sufficient to do a certain work requiring skill and experience, the master, who had knowledge to the contrary, could not escape liability for failure to warn and instruct. In Pinney v. King, 107 N. W. 1127, the court said: "In view of the extreme dangers and hazards connected with the use of dynamite, of which the court will take notice, and the manner in which it was prepared for use in this particular work, it was unquestionably one of the personal duties of defendants properly to supervise and superintend its use, to provide reasonably safe methods for heating it, and to *instruct and warn inexperienced employees of its dangerous character and the manner in which to handle it with safety.*" In Dell v. McGrath, 99 N. W. 629, the court held: "It is equally well settled that it is the absolute duty of the master to inform his employee of the dangers incident to the work he is directed to do, as was held in Gray v. Commutator Co., 85 Minn. 463, 89 N. W. 322, where there are peculiar conditions increasing the risk or the hazards incident to the use of the instrumentality furnished by the master; and this without reference to his age or experience, unless such experience has acquainted him with the danger he incurs." In 3 Labatt's Master & Servant, sec. 1151, this language is used: "But it frequently happens that the evidence indicates either that the servant was not a person of the normal capacity contemplated by this principle, or that the risk to be encountered was of such a nature that even the possession of a normal capacity would not enable him to appreciate it without special training for, or a practical acquaintance with, the work to which it was incident. The presence of one or both of these elements will frequently render it impossible to say, as a matter of law, that the duty of instruction

was not owed to the servant, when, if they were abstracted from the case, the plaintiff would not be allowed to retain a verdict in his favor rendered on the theory that such a duty existed.'' And again, in section 1153, it is said: ''Another is that the master cannot be pronounced, as a matter of law, free from negligence, where the testimony fairly warrants the inference that the work in question was abnormally dangerous to an inexperienced employee, and that he had received no instructions as to the particular perils to be avoided and the proper means of avoiding them.'' In Welch v. Bath Ironworks, 57 Atl. 88, 92, the court said: ''But as to these dangers, if they in fact existed, no information or instructions whatever were given to this plaintiff. The master who used this dangerous explosive, the use of which was attended, it is claimed, with these peculiar dangers, should have known of their existence, and *should have also assumed that the plaintiff, a common laborer, had no knowledge concerning them, or at least have made inquiries in relation thereto.*'' The United States Supreme Court, in Mather v. Rillston, 156 U. S. 391, 39 L. Ed. 464, 470, states the law thus: ''So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereof, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained.'' [See, also, McCalman v. Illinois Cent. R. Co., 215 Fed. 465, 469.] Bailey summarizes the doctrine thus: ''Where an employer is required to use particularly hazardous agencies, he must give full information to the servant as to dangers arising therefrom, so as to enable the servant to avoid such dangers by the use of due care.'' [1 Bailey on Personal Injuries, sec. 305.]

These statements of the law are in accord with the decisions in our own State. Thus, in Bromley v. Smith, Beggs & Rankin Machine Co., 12 Mo. App. 594, the

court stated the law in this language: "It is the duty of a master to notify his servants employed in handling dangerous machinery, of the dangerous character of the machinery, *unless it is known to him at the time that the servants are experienced* in the management of such machinery." Also, in Dowling v. Allen & Co., 6 Mo. App. 195, 199, the court said: "Employers are bound to furnish their employees with a reasonably safe place in which to work, considering the character of their business, and are bound to see that their employees have reasonable notice of any hidden danger known to the employer, but of which the employee might be ignorant without blame, and of which at the time he is hired he may reasonably be supposed to be in fact ignorant." In Deeds v. Railroad, 157 Mo. App. 463, 137 S. W. 1013, the plaintiff applied for and was given a job as a section hand on the railroad where the men used a hand car in going to and from their work. The additional duty was imposed on plaintiff of operating the brake on the hand car without being given any instructions as to the method of operating the same or warning as to its danger. The master merely assumed, without inquiry, that he was competent to do this work. The court there said: "It is well known that the law makes a distinction between a man without experience and one with experience in the operation of machinery, or doing work not commonly understood. The latter is held to a much more strict account for his actions in relation thereto than the former. It is, therefore, held to be the duty of the master to instruct the inexperienced employee as to the mode of operation and the dangers arising therein."

In Naughton v. Gaslight Co., 123 Mo. App. 192, 100 S. W. 1104, the injured man had been in defendant's employ about two months and is described as one whose "trade was that of blacksmith helper, and the evidence tends to show he had never cleaned out an ash pit until the day he was burned." The work he

was directed to do was such that it was generally done by experienced men and: "When any but an experienced hand was ordered to clean out the ashes in a chamber, some employee of experience was sent along to assist." There was nothing to show defendant's knowledge of the deceased's inexperience except as above stated. There is no intimation that he was a minor or as having any physical infirmity. Against the contention that the deceased was guilty of contributory negligence in undertaking to do this work and that the dangers were open and obvious, the court held: "There is but slight if any, evidence that Naughton was negligent and much evidence that defendant was in ordering him into a place of danger without proper instruction or safeguards." [See, also, Small v. Polar Wave Ice & Fuel Co., 179 Mo. App. 456, 463, 162 S. W. 709.]

My insistence is that, taking into consideration all the circumstances in evidence, including the fact that deceased applied for work as a shoveler and made no representations as to being experienced in exploding dynamite, the extent to which such work is extrahazardous, the fact that only the few who have had experience in that line of work could do the same in comparative safety and the improbability that one applying for work as a shoveler which does not usually involve "popping boulders" with dynamite would be experienced, the question of the master being put on notice as to his inexperience and being negligent in not informing him of the dangers was for the jury.

Whether or not the deceased was guilty of contributory negligence in undertaking to use dynamite in breaking boulders, in view of his knowing his own inexperience and the danger of so doing, depends on whether the danger was so obvious and glaring that a reasonably prudent man would not, under the same circumstances, undertake to do so. It is not claimed, however, that the court directed a verdict for defendant on

the ground that plaintiffs' evidence showed contributory negligence of the deceased as a matter of law. The whole question here is as to a prima-facie showing as to defendant's negligence. As the majority opinion holds that there is no negligence of the master, there is no need of discussing contributory negligence.

Nor is it material that in this case the deceased was not directly commanded to do the work of breaking boulders with dynamite. The fact that on going to work he found the other shovelers doing this work under the eye of the foreman and no one there ready to do the work for him was an implied command for him to do so also. This fixes defendant's liability the same as if deceased had been specially directed to do this work. [Marklewitz v. Olds Motor Works, 115 N. W. 999; 3 Labatt's Master & Servant, sec. 1146, p. 3045.]

It should be held, therefore, that the court erred in sustaining a demurrer to the evidence, and in not submitting the case to the jury on defendant's negligence in imposing on the deceased the doing of hazardous work without instructions or warning as to the dangers.

Deeming that the majority opinion is in conflict with Deeds v. Railroad, by the Kansas City Court of Appeals, and Naughton v. Gaslight Company, and Bromley v. Smith, Beggs & Rankin Machine Company, by the St. Louis Court of Appeals, all supra, I ask that this case be certified to the Supreme Court.